Case No. 19-13242
L.T. No. 16-CV-22483-RNS

**United States Court of Appeals
For The Eleventh Circuit**

CATHERINE PAPASAN, PAULA MEURER, TIMOTHY CHERRY, KURT
SHOEMAKER, SR., GWENDOLYN AND LOUIS KING, RICHARD AND
LEAH VOLLBERG, GEORGE ZUCCONI, GARY GRAUS, ANDREW
YOUNG, CHRISTOPHER JOHNSON, JAMES JACKSON, RICHARD
LANDSHEFT, SANDRA GREENE, NELSON AND MARJORIE GOEHLE,
JILL AND SID GARRETT,

*Appellants,*

v.

DOMETIC CORPORATION,

*Appellee.*

**On Appeal from a Final Order Entered in the
United States District Court for the Southern District of Florida**

**Appellants' Initial Brief**

Leslie A. Brueckner
**Public Justice, P.C.**
lbrueckner@publicjustice.net

Adam M. Moskowitz
Adam@moskowitz-law.com
Howard M. Bushman
Howard@moskowitz-law.com
Adam A. Schwartzbaum
Adams@moskowitz-law.com
Joseph M. Kaye
joseph@moskowitz-law.com
**THE MOSKOWITZ LAW FIRM, PLLC**

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, Plaintiffs-Appellants Paula Meurer, Timothy Cherry, Kurt Shoemaker, Sr., Gwendolyn and Louis King, Richard and Leah Vollberg, George Zucconi, Gary Graus, Andrew Young, Christopher Johnson, James Jackson, Richard Landsheft, Sandra Greene, Nelson and Marjorie Goehle, and Jill and Sid Garrett hereby disclose the following list of known persons, associated persons, firms, partnerships or corporations that have a financial interest in the outcome of this case, including all subsidiaries, conglomerates, affiliates, parent corporations, and other identifiable legal entities related to a party in this case:

1. Beard, Terrence A., Counsel for Appellants – Plaintiffs

2. Berman, Steve W., Counsel for Appellants – Plaintiffs

3. Brady, Corey, Counsel for Appellee – Defendant

4. Cherry, Timothy, Appellant – Plaintiff

5. Dometic Corporation, Appellee – Defendant

6. Garrett, Jill, Appellant – Plaintiff

7. Garrett, Sid, Appellant – Plaintiff

8. Goehle, Marjorie, Appellant – Plaintiff

9. Goehle, Nelson, Appellant – Plaintiff

10. Goldberg, Martin G., Counsel for Appellee – Defendant

11. Graus, Gary, Appellant – Plaintiff

12. Greene, Sandra, Appellant – Plaintiff

13. Hagens Berman Sobol Shapiro, LLP, Counsel for Appellants – Plaintiffs

14. Johnston, Christopher, Appellant – Plaintiff

15. Kaye, Joseph M., Counsel for Appellants – Plaintiffs

16. King, Gwendolyn, Appellant – Plaintiff

17. King, Louis, Appellant – Plaintiff

18. Landsheft, Richard, Appellant – Plaintiff

19. Lash & Goldberg, LLP, Counsel for Appellee – Defendant

20. Law Offices of Terrence A. Beard, Counsel for Appellants – Plaintiffs

21. Loeser, Thomas E., Counsel for Appellants – Plaintiffs

22. Mahoney, Barbara, Counsel for Appellants – Plaintiffs

23. Marker, Caleb, Counsel for Appellants – Plaintiffs

24. Meurer, Paula, Appellant – Plaintiff

25. Moskowitz, Adam M., Counsel for Appellants – Plaintiffs

26. Otazo-Reyes, Alicia M., Magistrate Judge, United States District Court for the Southern District of Florida

27. Patel, Pravin R., Counsel for Appellee – Defendant

28. Pincow, Emily L., Counsel for Appellee – Defendant

29. Plaintiffs' proposed class of "all persons in the United States who purchased

a Defective Gas Absorption Refrigerator and/or Defective Cooling Unit manufactured on or after January 1, 1997."

30. Rhodes, Gina, Counsel for Appellee – Defendant

31. Rutner, Erica, Counsel for Appellee – Defendant

32. Scarola, Jack, Counsel for Appellants – Plaintiffs

33. Schwartzbaum, Adam A., Counsel for Appellants – Plaintiffs

34. Scola, Jr., Robert N., District Judge, United States District Court for the Southern District of Florida

35. Searcy Denney Scarola Barnhart & Shipley, P.A., Counsel for Appellants – Plaintiffs

36. Shoemaker, Sr., Kurt, Appellant – Plaintiff

37. Soto, Edward, Counsel for Appellee – Defendant

38. The Moskowitz Law Firm PLLC, Counsel for Appellants – Plaintiffs

39. Vollberg, Leah, Appellant – Plaintiff

40. Vollberg, Richard, Appellant – Plaintiff

41. Weil, Gotshal & Manges, LLP, Counsel for Appellee – Defendant

42. Weintraub, Greg J., Counsel for Appellee – Defendant

43. Young, Andrew, Appellant – Plaintiff

44. Zimmerman Reed, LLP, Counsel for Appellants – Plaintiffs

45. Zucconi, George A., Appellant – Plaintiff

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs respectfully submit that oral argument is necessary to the just resolution of this appeal and will significantly enhance the Court's decision-making process, due both to the complexity of the record and procedural history and the complexity and importance of the legal issues.

# TABLE OF CONTENTS

TABLE OF CONTENTS ….. …………………………………………… ii

TABLE OF AUTHORITIES……………………………………………...iii-v

STATEMENT REGARDING ORAL ARGUMENT ………………………..1

STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION …………………………………………………………………...…1

STATEMENT OF THE ISSUE……………………………………………1

INTRODUCTION ……………………………………………………...2

STATEMENT OF THE CASE …………………………………………...3

    A.   Dometic Sold and Continues to Sell Millions Of Refrigerators Without Telling Consumers That They Contain Dangerous and Inherently Defective Cooling Units……………………….…..3

    B.   Class Membership Can Readily Be Ascertained Based on Official Records..… ….….….……………………………………….5

    C.   This Lawsuit Seeks Damages from Loss of Plaintiffs' Benefit of the Bargain........................................................................................8

    D.   Plaintiffs Sought Class Certification.………………………..9

    E.   The Lower Court Denied Certification on Ascertainability Grounds. ……………..……..……………………..……………………14

STANDARD OF REVIEW ………………………………………..…16

SUMMARY OF ARGUMENT ……………………………………………16

ARGUMENT ………………………………………………………....21

I.   The District Court Erred in Applying an Ascertainability Standard that Requires a Showing that Class Members Can Be Identified In Administratively Feasible Fashion.……………………………………21

    A.   The Traditional Approach to Ascertainability Merely Requires a Showing that the Class is Defined in Clear and Objective Terms…21

B.  The Recent Deviation from Traditional Ascertainability Has Been Widely Criticized and Roundly Rejected..…………………………..23

C.  Many District Courts in this Circuit Have Applied a Disfavored, Minority Approach to Ascertainability …..………..………………27

II.  Heightened Ascertainability is Contrary to Rule 23 and Not Justified by Any Countervailing Considerations …………………………………...31

A.  Heightened Ascertainability is Contrary to the Text and Core Purposes of Rule 23……………………………………………………..…...…31

B.  Heightened Ascertainability Cannot Be Justified By Administrative Feasibility Considerations..…………………………………….…..36

C.  Heightened Ascertainability Cannot Be Justified as Necessary to Protect the Rights of Class Members or Defendants………………40

1.  Heightened Ascertainability is Not Necessary to Protect Absent Class Members' Notice and Opt-Out Rights ……………...…40
2.  Heightened Ascertainability is Not Necessary to Protect Absent Class Members from Dilution of their Recoveries …………..42
3.  Heightened Ascertainability is Not Necessary to Protect Defendants……………………………………………………44

III.  EVEN IF HEIGHTENED ASCERTAINABILITY IS APPROPRIATE, THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING CERTIFICATION OF THIS CLASS. …………………………………………………………..……..46

A.  The District Court Erred in Rejecting Self-Identifying Affidavits to Determine Class Membership …………………………………....47
B.  The District Court Erred in Rejecting Plaintiff's Showing that Class Members Can Also Be Identified Using Official Records………..49

IV.  The District Court Erred in Dismissing the Case for Lack of    Jurisdiction After Denying Class Certification ……………………………………53

CONCLUSION…………………………………….……………………53

CERTIFICATES OF COMPLIANCE ……………………………..……55

CERTIFICATE OF SERVICE…………………………………..……55

# TABLE OF AUTHORITIES

## Cases

*Allapattah Services, Inc. v. Exxon Corp.*, 333 F.3d 1248 (11th Cir. 2003)............38

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)................................... passim

*Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) ...................................23

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).................................33

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017). .................. passim

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ...........................14

*Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225 (11th Cir. 2016)..............38

*Burrow v. Forjas Taurus S.A.*, No. 16-21606-Civ, 2019 U.S. Dist. LEXIS 63893 (S.D. Fla. Mar. 15, 2019).................................................................48

*Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782 (11th Cir. 2014) ..................................................................... 14, 17

*Byrd v. Aaron's Inc.*, 784 F.3d 154 (3d Cir. 2015).................................................26

*Carlotti v. ASUS Computer International*, No. 18-cv-03369-DMR, 2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) ...................................................48

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) ...........................35

*Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013)............................... passim

*Carriuolo v. Gen. Motors Co.*, 823 F.3d 977 (11th Cir. 2016..................................10

*City Select Auto Sales Inc. v. BMW Bank of N. Am.*, 867 F.3d 434 (3d Cir. 2017).27

*Cox v. Porsche Fin. Serv.*, 330 F.R.D. 322 (S.D. Fla. Feb 14, 2019).............. 13, 46

*Dale v. Comcast Corp.*, 498 F.3d 1216 (11th Cir. 2007) ......................................35

*DeBremaecker v. Short*, 433 F.2d 733 (5th Cir.1970)............................................23

*Dickens v. GC Services Ltd. P'ship*, 706 F. App'x 529 (11th Cir. 2017)......... 33, 35

*Etter v. Thetford Corp.*, No. 8:13-cv-0081-JLS (RNB) (C.D. Cal. May 1, 2017) ..11

*Etter v. Thetford, Corp.,* No. 8:13-cv-00081 (C.D. Cal. Aug. 19, 2016) ... 11, 12, 16

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005) ......................38

*Garza v. Sporting Goods Properties*, CIVIL ACTION NO. SA-93-CA-1082, 1996 WL 56247 (W.D. Tex. Feb. 6, 1996) ...................................................48

*GMC v. Bryant*, 285 S.W.3d 634 (Ark. 2008) .......................................................49

*Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330 (11th Cir. 2006) ............................................................................................................16

*In re Apple Iphone Prods. Liab. Litig.*, No. 5:10-md-2188 RMW, 2012 WL 3283432 (N.D. Cal. Aug. 10, 2012) ...................................................48

*In re Atlas Roofing Corp. Chalet Shingle Products Liab. Litig.*, 1:13-CV-4222-TWT, 2017 WL 2501757 (N.D. Ga. June 9, 2017)................................31

*In re Chiquita Brands Intl. Inc. Alien Tort Stat. and Shareholders Derivative Litig.*, 331 F.R.D. 675 (S.D. Fla. 2019) ..........................................30

*In re Haier Freezer Consumer Litigation*, No. 5:11-CV-02911-EJD, 2013 WL 2237890 (N.D. Cal. May 21, 2013)...................................48

*In re Petrobras Sec.*, 862 F.3d 250 (2d Cir. 2017) ...........................................26

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 2016 WL 5338012 (N.D. Ohio Sept. 23, 2016) ...............................................48

*J.D. v. Azar*, 925 F.3d 1291 (D.C. Cir. 2019)..............................................32

*Jones v. DirecTV, Inc.*, 381 F. App'x 895 (11th Cir. 2010) ...........................35

*Karhu v. Vital Pharmaceuticals, Inc.*, 621 F. App'x 945 (11th Cir. 2015)..... passim

*Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004) ........................ 33, 35, 36, 37

*Klay v. United Health Group, Inc.*, 376 F.2d 10926 (11th Cir. 2004) ....... 16, 34, 38

*Little v. T-Mobile USA, Inc.*, 691 F.3d 1302 (11th Cir. 2012)..............................16

*Loughlin v. Amerisave Mortgage Corp.*, 114CV03497LMMLTW, 2018 WL 1887292 (N.D. Ga. Mar. 19, 2018) ...............................................31

*Marcus v. BMW of N. Am., LLC,* 687 F.3d 583 (3d Cir. 2012) ...............................24

*Melton v. Cent. Arms, Inc.,* 16-CV-21008, 2018 WL 6980715 (S.D. Fla. Nov. 28, 2018)...................................................................31

*Mirabella v. Vital Pharm., Inc.*, 12-62086-CIV, 2015 WL 1812806 (S.D. Fla. Feb. 27, 2015)...................................................................31

*Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015) ....................... passim

*Noel v. Thrifty,* 7 Cal.5th 955 (2019) .......................................................26

*Ocwen Loan Servicing, LLC v. Belcher*, 18-90011, 2018 WL 3198552 (11th Cir. June 29, 2018)........................................................ 28, 50

*Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 594 (C.D. Cal. 2008) ............49

*Perisic v. Ashley Furniture Industries, Inc.,* 8:16-CV-3255-T-17MAP, 2018 WL 3391359 (M.D. Fla. June 27, 2018) .................................................31

*Ray v. Jud. Correction Services, Inc.*, 2:12-CV-02819-RDP, 2019 WL 4689214 (N.D. Ala. Sept. 26, 2019)................................................31

*Red v. Kraft Foods, Inc.*, 2012 WL 8019257 (C.D. Cal. Apr. 12, 2012).....................................................14

*Reyes v. BCA Fin. Services, Inc.*, 16-24077-CIV, 2018 WL 3145807 (S.D. Fla. June 26, 2018)................................................................49

*Riffle v. Convergent Outsourcing, Inc.*, 311 F.R.D. 677 (M.D. Fla. 2015)............31

*Rikos v. Procter & Gamble Co.* 799 F.3d 497 (6th Cir. 2015)................................26

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc*., 601 F.3d 1159 (11th Cir. 2010) (same) ...................................................................37

*Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529 (S.D. Fla. 2015) ................10

*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc*., 821 F.3d 992 (8th Cir. 2016) ..26

*Seeligson v. Devon Energy Prod. Co., L.P.*, 761 F. App'x 329 (5th Cir. 2019) .....26

*Shuford v. Conway*, 326 F.R.D. 321 (N.D. Ga. 2018) ............................................31

*Tait v. BSH Home Appliances Corp*., No. SACV 10-0711-DOC (ANx), 2015 WL 4537463 (C.D. Cal. July 27, 2015) ....................................................................48

*Vega v. T–Mobile USA, Inc.,* 564 F.3d 1256 (11th Cir. 2009) ................................16

*Wasser v. All Market, Inc.*, 329 F.R.D. 464 (S.D. Fla. 2018) .................................31

*Wasser v. All Market, Inc.*, 329 F.R.D. 464 (S.D. Fla. 2018) .................................13

*Williams v. Mohawk Indus., Inc*., 568 F.3d 1350 (11th Cir. 2009) ........................36

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010)............10

*Wright Transportation, Inc., v. Pilot Corp*., 841 F. 3d 1266 (11th Cir. 2016)........53

*Wright Transportation, Inc., v. Pilot Corp*., 841 F.3d 166 (11th Cir. 2016)..........21

*Young v. Nationwide Mutual Insurance Co.*, 693 F.3d 532 (6th Cir. 2012) ..........41

**Statutes**

28 U.S.C. § 1291 ......................................................................................................1

28 U.S.C. § 1332(d) ................................................................................................1

49 U.S.C. § 30018(c)(1)...........................................................................................7

**Other Authorities**

Daniel Luks, *Ascertainability in the Third Circuit: Name That Class Member*, 82 Fordham L. Rev. 2359 (2014) ..................................................................... 25, 32

Jordan Elias, *The Ascertainability Landscape and the Modern Affidavit*, 84 Tenn. L. Rev. 1 (2016).......................................................................................... 25, 43

Rhonda Wasserman, *Ascertainability: Prose, Policy, and Process*, 50 Conn. L. Rev. 695 (2018) .................................................................... 23, 44, 52

*The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 Fla. L. Rev. 71, 119-20 (2007)....................................................43

**Rules**

Federal Rule of Appellate Procedure 32(a)(7)........................................................55

Federal Rule of Civil Procedure 23 ................................................................ passim

**Treatises**

7A Charles Alan Wright *et al., Federal Practice & Procedure* (3d ed. 2019) .......22

*Manual For Complex Litigation* (4th ed. Fed. Jud. Cir. 2019)......................... 32, 52

*Manual For Complex Litigation* (5th ed.)…………………………...22, 32, 52

## STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION

The district court had subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from Dometic, there are more than 100 class members nationwide, and the aggregate amount in controversy exceeds $5,000,000. Because the district court's jurisdiction was based on CAFA, and it denied class certification, it dismissed this action. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the district court abused its discretion by refusing to certify a class action seeking economic damages for owners of defective and dangerous refrigerators on the sole ground that the class action is not "ascertainable," where (1) the class is defined in clear and objective terms that will easily allow unnamed plaintiffs to determine whether they are members of the class, and (2) class members can be identified in an administratively feasible fashion based on defendant's prior success in identifying class members during two nationwide recalls of these defective refrigerators and the fact that the refrigerators have individual serial numbers.

**INTRODUCTION**

This appeal challenges the district court's refusal to certify a class action by applying a heightened standard for ascertainability that has been rejected by no fewer than *six* federal courts of appeals. The class should have been certified both because the district court applied a disfavored standard for determining ascertainability and, just as importantly, this class action actually *satisfies* that erroneous standard.

Ascertainability has traditionally been understood as merely requiring a clear and objective class definition. But in 2015, based on a decision that has since been roundly rejected, *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013), this Circuit issued an unpublished decision that requires a threshold showing, at class certification, that all class members can be identified in an "administratively feasible" manner. *See Karhu v. Vital Pharmaceuticals, Inc.*, 621 F. App'x 945, 948 (11th Cir. 2015). Even though *Karhu* is not binding precedent, its "administrative feasibility" standard has killed off a number of class actions that would have passed the traditional ascertainability test with flying colors—including this case.

This brief first explains why that standard violates Federal Rule of Civil Procedure 23 and cannot be justified by any countervailing policy considerations— and why the class is undoubtedly ascertainable when applying the standard actually required by Rule 23. Plaintiffs then explain why, even if this Court agrees with the district court's decision to apply a heightened ascertainability standard, the lower

court's ruling should still be reversed because there is no question, based on the type of product at issue here—refrigerators bearing unique model and serial numbers—*and* on the defendant's own prior conduct during the course of its two nationwide recalls of its dangerous, defective product, that class members *can* be identified in an administratively feasible fashion. The lower court's refusal to recognize that fact was an abuse of discretion warranting reversal.

## STATEMENT OF THE CASE

**B. Dometic Sold and Continues to Sell Millions of Refrigerators Without Telling Consumers That They Contain Dangerous and Inherently Defective Cooling Units.**

From 1997 to 2016, Dometic sold millions of refrigerators designed for use in recreational vehicles ("RVs"), most of which contained defective cooling units that cause the refrigerators to malfunction and sometimes burst into flames. *See* Doc. 300 (Consolidated Complaint), ¶¶236–51.

The boiler tubes in the cooling units are prone to corrosion or fatigue failure, and can develop microscopic cracks, causing the flammable chemicals and gases inside the boiler tubes to leak, creating a serious risk of fire when close to a heat source. *Id.*

Dometic knew that these cooling units, which were installed in 10 of its refrigerator models, were defective as early as 2000. *Id.*, ¶8. But rather than fix the

refrigerators—or warn of potential safety risks—Dometic initiated two limited, and ultimately ineffective, recalls: first in 2006 and then in 2008. *Id*., ¶252.

The initial recall involved over 927,000 units across 10 models. *Id*. ¶253. By 2008, problems with the leak persisted and Dometic decided it had to expand the recall population to add 745,574 units. *Id*. ¶255. Collectively Dometic recalled ten refrigerator models manufactured between 1997 and 2006. *Id*. ¶¶253–55. Dometic has never recalled certain other models, despite the fact that they share the same defects as the recalled models. *Id*. ¶257.

In each recall, Dometic represented that there was a limited defect in the refrigerators' cooling units and that the common, one-size-fits-all retrofit devices would fix the common defect, rendering the refrigerators safe to use. *Id.,* ¶244. This was false: the retrofit did not actually cure the underlying problem—internal corrosion of the boiler tube leading to cracks and potential leaks of flammable and noxious gases at high pressure. *Id*., ¶260. Instead, the recalls were simply designed to cut the power *after* a leak or fire already occurred. *Id.* Thus, a dangerous leak or fire must *first* occur for the retrofit kit to even operate. *Id.* Consumers were never told that the retrofit did not correct the cause of the leaks. *Id*., ¶267.

The underlying defect, therefore, remained even in units that were retrofitted. *Id.*, ¶¶284, 297. This material fact was actively concealed, and continues to be concealed, by Dometic, despite the ongoing risks to the public. *Id.*, ¶¶267–68.

Consumers have continued to experience problems with their units, including leaks and fires, post-recall in models manufactured both pre-and post-recall. *Id*., ¶302. Despite knowledge of the defect and fire risk, Dometic continues to market its refrigerators without any mention of the long-standing problems with its product. *Id.*, ¶ 289.

### C. Class Membership Can Readily Be Ascertained Based on Official Records.

Dometic knows how to identify the vast majority of class members through business records it maintains or has access to that show the refrigerator's, cooling unit's, or RV's unique serial number, which can be used to identify the owner. Any class members who cannot be contacted in this way can self-identify after receiving proper notice and attest to their class membership on an approved form.

First, Dometic maintains records of class members who have registered their refrigerators for warranty purposes and can confirm their membership in the class. *See* Doc. 371, Ex. 25, at 73.

Second, Dometic can use designated serial numbers to identify owners of each refrigerator or unit and confirm class membership. Dometic identifies each of the refrigerators it sells by a unique serial number. *See* Doc. 371 (Expert Report of Sonya Kwon) at 5–8, 10, & ns.11, 33; *id.* at Ex. 25 (Wagner Dep.) at 66–77; *id.* at Ex. 95 at 2. Within that serial number is a code that identifies the unit's manufacturing date. *Id.* While a large percentage of the refrigerators are distributed to RV manufacturers

("Original Equipment Manufacturers" or "OEMs") for installation in RVs, those RVs are also identified by a unique Vehicle Identification Number ("VIN number"), and OEMs record which refrigerator (by serial number) was installed in each. Doc. 371, Ex. 25 at 71–77.[1] Dometic has dealt with a finite number of OEMs. Ultimately, when an RV is insured or registered with a state department of motor vehicles ("DMV"), as required by law, a record is created tying the RV's specific VIN to the owner.

Each OEM that purchased the subject refrigerators from Dometic knows the refrigerator's serial number and, in turn, in what RV (with a distinct VIN number) it was installed. Defendant has access to those records and thus those records can be searched, either directly or through a vehicle records company to identify the vast majority of class members Ex. 25, Doc. 371 at 66–77; *see also* Ex. 24, Doc. 371 (Rebuttal Report of Robin Cantor), ¶ 30 & Ex. 1 (Sales Channel Breakdown). In fact, this is what Dometic did (through its recall vendor, Stericycle) when it conducted its two recall campaigns on the subject refrigerators, discussed *infra*, and

---

[1] The VIN numbers contain codes that denote the particular unit's year of manufacture. Doc. 371 (Kwon Report) at 7–8 & ns.23–27.

was required by the National Highway Traffic Safety Administration[2] to contact each class member owning one of the refrigerators subject to the recall.[3]

As Dometic's Recall Manager testified:

> Q. Okay. And do you know how the names were gathered in order to do those mailings?
>
> A. From RV manufacturers and also from our database of the consumer registered the refrigerator with use.
>
> Q. Okay.
>
> A. And from R.L. Polk.
>
> Q. What is R.L. Polk?
>
> A. It's a company that keeps track of all VIN numbers. So the manufacturers gave us VIN numbers, and they didn't know if they had refrigerators in them. So we hired RL Polk to give us the names of the consumers that had those VIN numbers.

*Id.* at 73. *See also* Doc. 371 (Kwon Report) at 8 (demonstrating how Dometic's expert used records Dometic had access to class member's serial numbers and VIN numbers to conduct her statistical analysis). Further, Dometic reached out to its finite group of OEMs and offered to have their recall manager handle all their

---

[2] *See* 49 U.S.C. § 30018(c)(1) (providing that a manufacturer shall notify the agency and owners when it "learns that a vehicle or equipment contains a defect and decides in good faith that the defect is related to motor vehicle safety.")

[3] Owner's addresses can be updated, as necessary, using the national change of address database, as is typically done by claims administrators in class actions.

responsibilities to contact class members by providing a list of all VINs with defective refrigerators. Doc. 386, Ex. 95.

Finally, class members can be ascertained by self-identification after an approved notice program. Again, this is what Dometic did pursuant to its recall campaigns when it distributed documentation that specifically instructed class members how to locate the serial and model numbers used to determine if they fell within the recall population. Doc. 371, Ex. 24 at 183–85, 189–91 (describing extensive notice program and confirming how customers could self-identify through serial numbers); Doc. 386, Ex. 95 at 6 (showing "[w]here to find the serial and model numbers on your Dometic refrigerator.")

### D. This Lawsuit Seeks Damages from Loss of Plaintiffs' Benefit of the Bargain.

Catherine Papasan and 17 other class representatives brought this action on behalf of residents of nine states against Dometic for manufacturing, selling, and distributing these defective refrigerators to over a million consumers nationwide.

The lawsuit alleges violation of various state consumer protection and implied warranty laws on behalf of the subclasses. Doc. 300, ¶¶337–643. The economic losses Plaintiffs seek are the costs to compensate class members for the diminution of value of their RVs as a result of the undisclosed defects. *Id*. ¶16. Plaintiffs alleged that, due to Dometic's concealment of material facts regarding the continuing defects, they each failed to receive the benefit of their bargain.

### D. Plaintiffs Sought Class Certification.

On March 14th, 2019, Plaintiffs moved for certification of a Rule 23(b)(3) class. Doc. 345 at 3. Plaintiffs argued that Dometic concealed "material facts regarding a safety defect" from each of them, "inducing their purchase of a defective and unmerchantable refrigerator at a premium price." *Id.* at 2. Plaintiffs argued that "[h]ad this material information been disclosed, reasonable consumers like Plaintiffs would have acted differently by not completing the transactions or attempting to pay less." *Id*.

Plaintiffs sought certification of nine subclasses, based on the various states in which the Plaintiffs purchased their refrigerators. *Id*. at 3. The class was defined in clear and objective terms with reference to seventeen distinct refrigerator models:

> All persons who purchased in [insert one of nine states] Dometic Gas Absorption Refrigerator models RM 2620; RM/DM2652; RM/DM2662; RM/DM2663: RM3762 & DMR/DMC7-Series; RM 2820; DM2852 & DM2862; RM3862 & RM3863; RM3962; NDM1062; RM 1350: 1350WIM; NDA1402: and 1402IMS built between January 1, 1997 and the present.

*Id*.

Plaintiffs argued that class certification was proper because the proposed class met all the requirements of Rule 23(a) and (b)(3). *Id*. at 12–20. Plaintiffs supported their motion with expert testimony demonstrating that a common defect existed in

all of the refrigerators' cooling units, which was not disclosed, causing class members to overpay for their units by a common amount.[4]

Plaintiffs further explained that Courts routinely certify consumer classes bringing analogous claims based on the failure to disclose design defects inherent in vehicles and appliances. *See, e.g.*, *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977 (11th Cir. 2016; *Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529 (S.D. Fla. 2015); *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010).

With regard to the implicit ascertainability requirement of class certification—the requirement at issue here—Plaintiffs argued that the class is objectively defined and there is an administratively feasible way of identifying members of the class or having them self-identify after proper notice attesting that they meet the objective criteria of class membership. In particular, Plaintiffs explained that, "similar to other defective vehicle and appliance class actions…, the Class members can be readily identified through Dometic's sales and warranty registration records, DMV records and if necessary, through affidavits." Doc. 345 at 12.

---

[4] *See generally* Doc. 346 Ex. 5 (Expert Report of Orion Kieffer and Peter Layson); Doc. 348 Ex. 58, (Rebuttal Report of Orion Kieffer and Peter Layson); Doc. 346 Ex. 6 (Expert Report of Dr. Garrett Glasgow); Doc. 348 Ex. 45 (Expert Rebuttal Report of Dr. Garrett Glasgow).

To support this assertion, Plaintiffs pointed to *Etter v. Thetford, Corp.,* No. 8:13-cv-00081 (C.D. Cal. Aug. 19, 2016), a class action where the court approved a notice plan for owners of Norcold-brand RV refrigerators, a competing brand very similar to Dometic's product, as demonstrating that "owners of RV refrigerators can be identified through objective means and notified of the pendency of a class action consistent with due process requirements." *Id.* at 12 n.23. *See also* Doc. 386 at 5–6.

*Etter* was an analogous case challenging Dometic's main competitor's similar conduct: selling defective gas-absorption refrigerators while concealing that retrofit devices installed during recall campaigns did not actually fix the defect. In granting class certification, the *Etter* Court found that the class was ascertainable requirement because the refrigerators and cooling units were large ticket items with specific serial numbers, as were the RVs they were installed in, allowing them to be traced to the current owner.[5] The Court held that, to the extent certain *Etter* class members' would not be identified in that way or through warranty registration records, proper notice would allow class members to self-identify and attest under penalty of perjury that they fall within the class definition.

---

[5] *See Etter v. Thetford Corp.*, No. 8:13-cv-0081-JLS (RNB) (C.D. Cal. May 1, 2017) at Doc. 563 (Final Order and Judgment Concerning Plaintiffs' Motion for Final Approval of Class Action Settlement, *5-6); *id.* at Doc. 539 (Order Granting Motion for Final Approval of Class Action Settlement, *13-14); *id.* at Doc. 505 (Robin Declaration re: Notice Procedures, ¶¶ 3–8); *id.* at Doc. 510 (Supplemental Declaration of Eric Robin, ¶ 6).

In opposing class certification here, Dometic did not address *Etter* at all. Instead, it argued that the class was not "ascertainable" because, under this Court's unpublished, non-precedential decision in *Karhu,* 621 F. App'x at 77, Plaintiffs had not "establish[ed]" that Dometic's records "are in fact useful for identification purposes." Doc. 373 at 12.

But in so arguing, Dometic did not deny that it has records of its sales to OEMs and dealers. *See id.* at 12–13. Nor did it dispute that, like car dealers, RV OEMs and dealers record their sales to customers by serial number. *Id.* Instead, Dometic simply argued that it "does not have records of the sales made by these intermediaries to consumers," without acknowledging that such records could be obtained by Plaintiffs prior to the giving of class notice. *Id.* at 13. Nor did it deny that once records identified the RVs with Dometic refrigerators installed, DMV records would identify the owners, as the Plaintiffs argued. As to warranty registration records, Dometic argued that "these too are deficient because 'many consumers don't register their product' with Dometic," without acknowledging that many consumers undoubtedly *do* register their high-value product. *Id.*

Most tellingly, as to its two prior recalls, Dometic admitted that it *had* actually sent "over 3 million recall notices for a recall population of only approximately 1.6 million units." *Id.* Dometic did so by notifying "consumers owning *any* RV sold by any of the OEMs it had done business with," thereby ensuring that consumers that

*did* own an RV with one of Dometic's refrigerators received actual notice of the recalls. *Id*. Dometic further admitted that "700,000 consumers submitted papers for a Safety Remedy." *Id*. at 13 n.34.

Dometic countered Plaintiffs' alternative argument that class membership could be proven via self-identifying affidavits, contending that "there would be no way to 'differentiate between submissions by real and fraudulent class members.'" *Id*. at 14 (quoting *Wasser v. All Market, Inc.*, 329 F.R.D. 464, 475 n.6 (S.D. Fla. 2018)). "Instead," said Dometic, "the only way to protect Dometic's due process rights is to require individual inspection of each class member's RV—*which is precisely what Dometic required during the recalls*." *Id*. at 14 (emphasis added).

Dometic did not explain why a process of self-identification that the company apparently utilized with no difficulty during the recall process was not sufficient for purposes of a class action. Instead, the company simply asserted that "self-identification would require an administratively infeasible process." *Id*.

In response, Plaintiffs first argued that "the proposed class is ascertainable because the class definition relies exclusively on objective criteria." Doc.386 at 5. Plaintiffs pointed out that, unlike in *Karhu*, 621 F. App'x at 72, "this case does not deal with a low-cost, over-the-counter product, but a more significant purchase involving receipts, serial numbers, insurance and registration processes." *Id.* at 5–6 (citing *Cox v. Porsche Fin. Serv.*, 330 F.R.D. 322, 330–31 (S.D. Fla. 2019), and *Red*

*v. Kraft Foods, Inc.*, 2012 WL 8019257, at *5 (C.D. Cal. Apr. 12, 2012) ("[S]elf-identification alone has been deemed sufficient to render a class ascertainable . . . where the relevant purchase was a memorable big ticket item." (citation omitted)).

Moreover, argued Plaintiffs, "Defendant's prior recalls show that there are feasible ways to determine class inclusion," noting that Dometic actually "advised NHTSA [the National Highway Traffic Safety Administration] that a feasible notice and owner identification method existed, stating: 'This information will enable Dometic to *ensure notification of all affected owners*.'" *Id.* at 5 (emphasis added).[6]

Finally, Plaintiffs pointed out that "[a]ll other issues Defendant raises, from the need for inspections to concerns about false affidavits, were recently rejected in *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131 (9th Cir. 2017)," a decision that rejected heightened ascertainability as inconsistent with Rule 23 and due process. *Id.* at 5–6.

### E. The Lower Court Denied Certification on Ascertainability Grounds.

The district court did not find that any of the explicit requirements for class certification under Rules 23(a) and (b)(3) were not satisfied. Rather, the court denied the motion for class certification solely on ascertainability grounds. Doc. 418 at 7.

Citing this Court's unpublished decisions in *Karhu* and in *Bussey v. Macon County Greyhound Park, Inc.*, 562 F. App'x 782 (11th Cir. 2014), the district court

---

[6] *See also* Doc. 386 Ex. 95 (OEM Recall packet provided to NHTSA).

held that "where a plaintiff proposes to identify class members to a defendant's records, he must '*establish* that the records are in fact useful for identification purposes, and that identification will be administratively feasible.'" *Id*. (emphasis in original; quoting *Karhu*, 621 F. App'x at 948).

The court dismissed the Plaintiffs' assertion "that Dometic's prior recalls resulted in obtaining customer sales data and sending comprehensive owner mailings," stating this argument "is misplaced" because "notification is not *identification*." *Id*. at 8 (emphasis in original). The court expressed concern that, although Dometic has, by its "own admission, sent three million recall notices for a recall population of only 1.6 million," the over-inclusiveness of the mailing showed that "the prior recalls do not provide a feasible method of identifying potential class members." *Id*. at 8.

As to Plaintiffs' suggestion that any class members who cannot be identified via official records can self-identify by affidavit after the receipt of direct or publication notice, the court faulted Plaintiffs for failing to "provid[e] the Court with any proposals demonstrating how self-identification would work, much less a plan that would be administratively feasible and not otherwise problematic." *Id*. at 9.[7]

---

[7] Plaintiffs were limited in their ability to address this issue because the court denied the parties' joint motion (initially proposed by Dometic) requesting mutual page extensions to address all issues presented in the complex class-certification motion. As such, Plaintiffs were limited to 20-page opening briefs and a 10-page reply to address all challenges to class certification. *See* Doc. 341.

In so ruling, however, the court did not reference the procedures approved in the *Etter* litigation or address Plaintiffs' assertion that additional records could be used to confirm class members' current or former ownership, such as the refrigerator's serial number, receipts, or RV registration and insurance.

As a consequence of its class certification denial, the district court concluded that it no longer had subject matter and dismissed the case. This appeal followed.

## STANDARD OF REVIEW

This court reviews a district court's class certification order for abuse of discretion. *Heffner v. Blue Cross & Blue Shield of Ala., Inc*., 443 F.3d 1330, 1337 (11th Cir. 2006). "'A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures' in ruling on class certification, makes clearly erroneous fact findings, or applies the law 'in an unreasonable or incorrect manner.'" *Little v. T-Mobile USA, Inc*., 691 F.3d 1302, 1306-07 (11th Cir. 2012) (quoting *Klay v. United Health Group, Inc.*, 376 F.2d 1092, 1096 (11th Cir. 2004)). Under this standard, factual determinations are reviewed for clear error, and legal determinations are reviewed *de novo*. *Vega v. T–Mobile USA*, *Inc.,* 564 F.3d 1256, 1264–65 (11th Cir. 2009).

## SUMMARY OF ARGUMENT

**I.** Ascertainability should not have barred certification of this class. The class is defined in clear and objective terms that make it easy for class members to identify

themselves as belonging within the class. The class definition lists 17 refrigerator models, by number. It says that the class consists of everyone who purchased one of those distinct models during a specific time period. To determine they own a refrigerator included in the class definition, a consumers need only look at the model number and year. If a consumer sold their RV and isn't sure whether it included a subject Dometic refrigerator, the consumer could contact the dealer or the manufacturer to find out. This is not rocket science.

The fact that this class is defined in objective terms should have been sufficient to demonstrate ascertainability. In fact, prior to 2015, there is little question that this class *would* have been found ascertainable under long-standing Eleventh Circuit precedent, which—like other federal circuits—evaluated ascertainability by looking at the class definition.

The district court's contrary conclusion was based on two unpublished decisions of this Circuit that adopted aspects of an ascertainability standard that has since been rejected by no fewer than *six* federal courts of appeals. *See* Doc. 418 (relying on *Karhu*, 621 F. App'x at 952, and *Bussey,* 562 F. App'x at 787).

Under this approach (which this brief refers to as "heightened ascertainability"), a class cannot be certified absent a threshold showing that there is an "administratively feasible" way to identify all class members—a standard that, under *Karhu*, presumptively disallows the use of self-identifying affidavits. Because

self-identification is often the only way for unnamed class members to prove their membership in a class, heightened ascertainability has become a significant barrier to class certification, particularly in cases involving small-value consumer purchases.

**II.** The district court's first error was in applying this disfavored standard for determining whether this class is ascertainable. Heightened ascertainability thwarts *the* core purpose animating Rule 23: "to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (quotation and citation omitted).

This outcome is not only contrary to the core purposes of Rule 23; it actually undermines the way the Rule is written and was designed to work. In particular, Rule 23 *already* has a mechanism for evaluating whether a class action is administratively feasible: the "superiority" prong of Rule 23(b)(3), which includes considerations of manageability. This feature of the Rule is more than adequate to deal with any problems of "infeasibility" that may render a class action inferior to other modes of adjudication.

And, importantly, unlike heightened ascertainability, the superiority determination requires a court to *balance* any concerns about manageability with the likelihood that, absent a class action, class members will not be able to pursue any

relief. That balancing process prevents manageability concerns from being considered "in a vacuum." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663 (7th Cir. 2015). Heightened ascertainability removes the critical social justice portion of the equation, ensuring that many "[c]lass actions involving inexpensive consumer goods will "likely fail at the outset." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017).

This draconian outcome might be tolerable if compelled by some overriding considerations of due process or fundamental fairness. But it is not. A showing of "administratively-feasible" identifiability is unnecessary to safeguard class members' ability to receive adequate notice, because "neither Rule 23 nor the Due Process Clause requires actual notice to each individual class member." *Id*.

Nor is heightened ascertainability necessary to protect the due process rights of defendants. Due process considerations are minimal where, as here, plaintiffs have been able to determine total sales of the defective product, so there is no way the defendant will have to pay out more than its total liability. And heightened ascertainability is not necessary to protect a defendant's right to raise individual defenses to claims because courts have ample ways to "tailor fair verification procedures to the particular case…" *Mullins*, 795 F.3d at 670.

**III.** Even if the district court was correct in applying a heightened ascertainability standard, it nonetheless abused its discretion in determining that there is not an "administratively feasible" way of identifying *this* class.

Unlike *Karhu*, this case does not involve a small-ticket, fungible consumer item, where class members might not remember whether they purchased the defendant's product or have any way of proving that they did (e.g., a cash purchase). Rather this case involves defective *refrigerators* bearing distinctive identifiers, including specific model, serial, or VIN numbers. These distinctive identifiers not only help class members determine whether they are in the class, but also ensure that Dometic can challenge any affidavit it deems suspicious, satisfying any due process concerns.

Beyond that, there is every likelihood that class members *can* also be identified by official records. This particular product has already been the subject of *two* nationwide recalls, where Dometic demonstrated itself to be perfectly capable of notifying purchasers of its defective refrigerators. Given this fact—which distinguishes this class action from any other addressed by this Court—ascertainability should have been an easy call, even under a heightened standard.

**IV.** The district court further erred when it dismissed the case for lack of subject matter jurisdiction in light of its class-certification denial. Dometic has affirmed that it agrees with Plaintiffs that the dismissal was a clear legal error in

contradiction to *Wright Transportation, Inc., v. Pilot Corp*., 841 F.3d 166 (11th Cir. 2016), where this Court affirmed "that subject matter jurisdiction [under CAFA] is not destroyed when a district court denies class certification." *Id*. at 1271–72. *See* Doc. 430. Thus, even if the court was correct in denying certification, it erred in dismissing the individual claims of the class representatives.

## ARGUMENT

I. **THE DISTRICT COURT ERRED IN APPLYING AN ASCERTAINABILITY STANDARD THAT REQUIRES A SHOWING THAT CLASS MEMBERS CAN BE IDENTIFIED IN AN ADMINISTRATIVELY FEASIBLE WAY.**

### A. The Traditional Approach to Ascertainability Merely Requires a Showing that the Class is Defined in Clear and Objective Terms.

Until fairly recently, federal courts uniformly understood ascertainability to be about the class definition: the need to define the class in a precise and objective manner so that the court and potential class members can determine who is and is not included. *See Karhu*, 621 F. App'x at 952 (Martin, J., concurring). This approach focuses on the adequacy of the class definition itself, rather than on the potential difficulty of identifying individual class members

As Judge Martin explained in *Karhu*, "[h]istorically, courts analyzing ascertainability have required something quite narrow. 'Ascertainability has traditionally been defined as the existence of a class whose members can be identified by reference to objective criteria in the class definition.'" *Id*. (citation

omitted). Thus, "[t]he leading class action treatise similarly notes that 'courts essentially focus on the question of whether the class can be ascertained by objective criteria.'" *Id.* (quoting *Newberg on Class Actions* §3.3 (5th ed.) ("*Newberg*"); *Manual for Complex Litig. 4th* (Fed. Jud. Ctr. 2019) § n21.222 ("An identifiable class exists if its members can be ascertained by reference to objective criteria.")).[8]

There is a reason why Courts have traditionally adopted this approach to ascertainability. Among other things, it works to weed out, right up front, classes that are defined in imprecise or vague terms or by subjective criteria, such as by a person's state of mind. *See Mullins*, 795 F.3d at 659–61 (collecting cases). This protects courts from having to engage in time-consuming, fact-intensive inquiries as to which individuals possess the requisite state of mind.

This class-definition-focused approach also guards against classes that are defined in terms of success on the merits—so called "fail-safe" classes—that "raise obvious fairness problem[s] for the defendant" because "a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the

_____

[8] *See also* 7A Charles Alan Wright *et al., Federal Practice & Procedure* §1760 (3d ed. 2019) (federal courts have long "held that the class does not have to be so ascertainable that every potential member can be identified at the commencement of the action."); *Newberg* §3:3 ( "a court need not know the identity of each class member before certification; ascertainability requires only that the court be able to identify class members at some stage of the proceeding."); *Manual for Complex Litig.* § 21.222 ("the identity of individual class members need not be ascertained before class certification.")

judgment." *Id.* at 660; *see also* Rhonda Wasserman, *Ascertainability: Prose, Policy, and Process*, 50 Conn. L. Rev. 695, 711-12 (2018) (hereinafter "*Prose*") (explaining why traditional ascertainability guards against fail-safe classes).

Finally, the traditional approach to ascertainability "ensure[s] that the class is not defined so broadly as to encompass individuals 'who have little connection with the claim being litigated; rather, it must be restricted to individuals who are raising the same claims or defenses as the representative.'" *Id.* at 709 (citation omitted). This ensures that only individuals who were actually harmed by the defendant's conduct are included in the class and can claim a recovery, protecting the integrity of the class action process itself.

## B. The Recent Deviation from Traditional Ascertainability Has Been Widely Criticized and Roundly Rejected.

Until recently, this Circuit followed the traditional approach to ascertainability, just like other federal courts of appeal. *See Karhu*, 621 F. App'x at 952 (Martin, J., concurring).[9]

---

[9] This approach traces back to *DeBremaecker v. Short*, 433 F.2d 733 (5th Cir.1970), where the Fifth Circuit defined ascertainability solely in terms of the class definition. *See id.* at 734 ("[a] class made up of 'residents of this State active in the 'peace movement' * * * 'does not constitute an adequately defined or clearly ascertainable class contemplated by Rule 23.'"). In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

But in 2012, the Third Circuit introduced a new approach to ascertainability that shifted the inquiry to class-member identifiability—an issue that had previously been considered, if at all, as part of the superiority requirement of Rule 23(b)(3)(D) (which includes considerations of manageability).

The trouble started with *Marcus v. BMW of North America, LLC,* 687 F.3d 583 (3d Cir. 2012), where the district court certified a class of purchasers of vehicles equipped with certain tires that had "gone flat and been replaced." *Id*. at 588. The Third Circuit reversed on ascertainability grounds, dictating that, on remand, the district court "must resolve the critical issue of whether the defendants' records can ascertain class members and, if not, whether there is a reliable, administratively feasible alternative." *Id*. at 594.

The next year, another Third Circuit panel built on the cracked foundation laid by *Marcus* when it decided *Carrera v. Bayer Corp*., 727 F.3d 300 (3d Cir. 2013), a consumer class action brought by purchasers of a weight-loss supplement. Contrary to the traditional approach to ascertainability, *Carrera* held that a damages class action cannot be certified unless the plaintiffs can prove (1) that they will be able to identify—or "ascertain"—the individual members of the class through a process that is "reliable," "administratively feasible," and does not require "much, if any, individual factual inquiry"; and (2) that they will be able to do so without relying on

affidavits and claims forms (used in claims processes for decades) because those forms of proof are not sufficiently "reliable." *Id.* at 307–10.

*Carrera* was immediately criticized because it makes consumer class actions all but impossible to certify, thereby undermining Rule 23's core purpose. *See, e.g.*, Daniel Luks, *Ascertainability in the Third Circuit: Name That Class Member*, 82 Fordham L. Rev. 2359, 2393 (2014) ("Ascertainability as applied by the Third Circuit presents a potent tool for defendants to defeat many if not all small-claims consumer class actions.").

As it turns out, however, the Third Circuit's ascertainability standard has proven to have a remarkably short lifespan. *See* Jordan Elias, *The Ascertainability Landscape and the Modern Affidavit*, 84 Tenn. L. Rev. 1, 21 (2016) ("[t]he 'high-water mark' of *Carrera* soon receded.") (footnote omitted). Not only has it been specifically rejected by six other circuits and, most recently, the California Supreme Court, but it has been criticized and largely disavowed within the Third Circuit itself.

*Carrera*'s precipitous decline began in 2015, when the Seventh Circuit decided *Mullins*, a case that, like *Carrera*, involved a dietary supplement. In a resounding rejection of *Carrera*, *Mullins* held that a class definition consisting of all purchasers of the defendant's product within a specified time period was neither vague nor subjective and thus met that Circuit's traditional test for ascertainability,

which merely required "that a class must be defined clearly and that membership be defined by objective criteria." 795 F.3d at 660–61.

*Mullins* was just the beginning. In short order, the Second, Fifth, Sixth, Eighth, and Ninth Circuits joined the Seventh in rejecting the Third Circuit's approach to ascertainability.[10]

Even the Third Circuit has cabined that doctrine in significant ways. First, in *Byrd v. Aaron's Inc.*, 784 F.3d 154 (3d Cir. 2015), a case involving computer spyware, the Third Circuit reversed the denial of class certification on ascertainability grounds, clarifying that *Carrera* does not impose a "records

---

[10] *See Rikos v. Procter & Gamble Co*. 799 F.3d 497, 525 (6th Cir. 2015) ("We see no reason to follow *Carrera*, particularly given the strong criticism it has attracted from other courts."); *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc*., 821 F.3d 992, 996 (8th Cir. 2016) (declining to address "ascertainability as a separate, preliminary requirement"); *In re Petrobras Sec.*, 862 F.3d 250, 265 (2d Cir. 2017) ("With all due respect to our colleagues on the Third Circuit, we decline to adopt a heightened ascertainability theory that requires a showing of administrative feasibility at the class certification stage."); *Briseno*, 844 F.3d at 1123 ("Rule 23's enumerated criteria already address the policy concerns" that led the Third Circuit "to adopt a separate administrative feasibility requirement, and do so without undermining the balance of interests struck by the Supreme Court, Congress, and the other contributors to the Rule."); *Seeligson v. Devon Energy Prod. Co., L.P*., 761 F. App'x 329, 334 (5th Cir. 2019) (unpublished) ("[T]his court has not adopted [the Third Circuit's] heightened [ascertainability] standard. Instead, a party need only demonstrate—'at some stage of the proceeding'—that the class is 'adequately defined and clearly ascertainable.'") (footnotes omitted). The California Supreme Court recently joined the chorus of anti-*Carrera* voices in rejecting an approach to ascertainability that requires a showing, at class certification, that class members can be identified via some form of official record. *See Noel v. Thrifty,* 455 P. 3d 626 (Cal. 2019).

requirement." *Id*. at 164. Nor, *Byrd* held, must plaintiffs show that they can identify class members at the certification stage; instead, determining whether someone meets the class definition can be handled at the claims processing stage and such verification "indeed must be done in most successful class actions." *Id*. at 170–71.

Then, in *City Select Auto Sales Inc. v. BMW Bank of North America*, 867 F.3d 434 (3d Cir. 2017), the Third Circuit retreated even further, rejecting any categorical rule against allowing class members to identify themselves through affidavits, as long as those affidavits could be cross-checked against other sources. *Id*. at 441–42.

\* \* \*

In short, the administrative-feasibility approach to ascertainability introduced by the Third Circuit in 2012 has fallen into disfavor, even within that circuit. The dominant approach to ascertainability focuses on the class definition: a class is ascertainable if it is defined in sufficiently clear and objective terms to allow class members to self-identify as belonging within the class. *See Mullins*, 795 F.3d at 657.

### C. Many District Courts in this Circuit Have Applied a Disfavored, Minority Approach to Ascertainability.

The time has come for this Court to weigh in. The Eleventh Circuit has yet to issue any binding rulings on heightened ascertainability since the Third Circuit's controversial decision in *Carrera*. *See Ocwen Loan Servicing, LLC v. Belcher*, No.

18-90011, 2018 WL 3198552, at *3 (11th Cir. June 29, 2018) (noting that "our circuit has yet to address this split [on ascertainability] in a published opinion").

However, in the brief interlude between *Carrera* and other Circuits' rejection of that ruling, this Court issued an unpublished decision that contained elements of the heightened ascertainability approach: *Karhu v. Vital Pharmaceuticals, Inc.*, 621 F. App'x 945, 948 (11th Cir. 2015).[11]

*Karhu* involved over-the-counter purchases of mislabeled dietary supplements—precisely the kind of small-value claims that cannot be brought absent a class action. *See Amchem Prods.*, 521 U.S. at 617 (noting that the class action vehicle was intended to "vindicat[e] … the rights of groups of people who individually would be without effective strength to bring their opponents into court at all") (quotations omitted). Even though that type of class action had previously been allowed in this Circuit, *see Karhu*, 612 F. App'x at 952 (Miller, J., concurring), the district court in *Karhu* denied class certification on the ground that the members of the class were not actually identifiable based on some form of official record (and, because the product was so inexpensive, they were unlikely to have retained their receipts). *Id.* at 946–47.

---

[11] *Karhu* was a split decision authored by a judge sitting by designation from another forum (the Honorable Richard W. Goldberg, United States Court of International Trade).

The *Karhu* panel affirmed, holding that "[i]n order to establish ascertainability, the plaintiff must propose an *administratively feasible method by which class members can be identified*." *Id.* at 946 (emphasis added). The plaintiff failed to do so, said the panel majority, because he had failed to adequately explain how the defendant's sales data "would aid class-member identification." *Id*.

*Karhu* did not rule out the use of self-identifying affidavits to prove class membership. But the majority held that "a plaintiff cannot satisfy the ascertainability requirement by proposing that class members self-identify (such as through affidavits) without first establishing that self-identification is administratively feasible and not otherwise problematic." *Id*. at 948. The majority then held that "[b]ecause Karhu had not himself proposed an affidavit-based method, he necessarily had not established how the potential problems with such a method would be avoided." *Id.* at 949.

In his concurrence, Judge Miller expressed concern that the majority's "administrative feasibility" approach to ascertainability was contrary to the "quite narrow" approach that courts have traditionally applied under Rule 23, including in this Circuit. *See id.* at 952 (Miller, J., concurring). Judge Miller further objected that heightened ascertainability risks "erod[ing]" the core purpose of class actions, which is to allow consumers with small-value claims to band together "to bring their opponents into court." *Id*. at 951 (citing *Amchem*, 521 U.S. at 617). In Judge Miller's

view, consumer affidavits are appropriate and useful, particularly where claims are relatively small and where the challenged product is not easily mistaken for "other unchallenged products on the market." *Id*. at 952.

Despite these concerns, and despite his belief that "self-identification would probably be a sufficient means of ascertaining a class of purchasers of a [the] product [at issue]," Judge Miller concurred (rather than dissented) because the plaintiff "simply did not adequately argue his class was ascertainable before the District Court." *Id*. at 954. He emphasized, however, that "I read today's majority opinion *narrowly*." *Id.* (emphasis added). "Class representatives in future cases may more clearly explain to district courts how affidavits will reliably show class membership based on the two factors I noted above, and I expect that district courts will closely consider those arguments." *Id*.

\* \* \*

Unfortunately, Judge Miller's "narrow" reading of the panel majority's approach to ascertainability has not gained substantial traction in this Circuit. Although some class actions have been certified under *Karhu*, heightened ascertainability has been applied to deny class certification in a range of cases involving serious wrongdoing.[12] This result is unacceptable because, as explained

---

[12] *See, e.g., In re Chiquita Brands Intl. Inc. Alien Tort Stat. and Shareholders Derivative Litig.*, 331 F.R.D. 675 (S.D. Fla. 2019) (class action on behalf of victims of kidnappings, torture, and extrajudicial killings against Columbian terrorist

below, heightened ascertainability is not consistent with Rule 23's text and purposes

or grounded in legitimate overriding concerns of law or policy.

## II. HEIGHTENED ASCERTAINABILITY IS CONTRARY TO RULE 23 AND NOT JUSTIFIED BY ANY COUNTERVAILING CONSIDERATIONS.

### A. Heightened Ascertainability is Contrary to the Text and Core Purposes of Rule 23.

For starters, Rule 23 does not mention ascertainability at all. That alone should

give this Court serious pause. Surely if the drafters of Rule 23 wanted to condition

---

organization under Torture Victim Protection Act); *Ray v. Jud. Correction Services, Inc.*, No. 2:12-CV-02819-RDP, 2019 WL 4689214 (N.D. Ala. Sept. 26, 2019) (civil rights class action on behalf of people subjected to abusive practices of private probation provider); *Melton v. Cent. Arms, Inc.,* 16-CV-21008, 2018 WL 6980715 (S.D. Fla. Nov. 28, 2018) (consumer class action involving allegedly defective semi-automatic firearms); *Perisic v. Ashley Furniture Indus., Inc.,* No. 8:16-CV-3255-T-17MAP, 2018 WL 3391359 (M.D. Fla. June 27, 2018) (consumer class action under Florida's Deceptive Unfair Trade Practice Act); *Shuford v. Conway*, 326 F.R.D. 321, 329 (N.D. Ga. 2018) (civil rights class action on behalf of prisoners "unconstitutionally subjected to use of gratuitous, unnecessary and punitive force…"); *Loughlin v. Amerisave Mortg. Corp.*, No. 114CV03497LMMLTW, 2018 WL 1887292 (N.D. Ga. Mar. 19, 2018) (class action alleging improper kickback scheme under Real Estate Settlement Procedures Act); *Wasser v. All Market, Inc.*, 329 F.R.D. 464, 472–75 (S.D. Fla. 2018) (consumer class action involving mislabeled coconut water); *In re Atlas Roofing Corp. Chalet Shingle Products Liab. Litig.*, No. 1:13-CV-4222-TWT, 2017 WL 2501757, at *1 (N.D. Ga. June 9, 2017) (consumer class actions involving defective roofing shingles); *Riffle v. Convergent Outsourcing, Inc.*, 311 F.R.D. 677 (M.D. Fla. 2015) (class action involving illegal debt collection); *Mirabella v. Vital Pharm., Inc.*, 12-62086-CIV, 2015 WL 1812806 (S.D. Fla. Feb. 27, 2015) (consumer class action involving dietary supplements).

class certification on a threshold showing of class member identifiability, they would have said so. But they did not.[13]

That is not surprising, because heightened ascertainability undermines the core reason why Rule 23 was created in the first place: to allow injury victims whose claims are too small to sustain binary litigation to band together to hold wrongdoing defendants accountable.

As the Supreme Court has stated, "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem*, 521 U.S. at 617 (quotation omitted). "A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Id.* But in class actions involving small value claims, it is often difficult, if not impossible, to identify all of the victims of the defendant's misconduct.

---

[13] Although many federal courts have read an implicit ascertainability requirement into the Rule, they have carefully limited that requirement to focus exclusively on the class definition, so as not to defeat the purposes of Rule 23. *See generally Newberg* § 3:2; Luks, *Ascertainability in the Third Circuit: Name that Class Member*, 82 Fordham L. Rev. at 2369-72 (discussing origins of ascertainability); *cf. Briseno*, 844 F.3d at 1125 (finding *any* administrative feasibility requirement contrary to Rule 23); *J.D. v. Azar*, 925 F.3d 1291, 1320 (D.C. Cir. 2019) (D.C. Circuit "has not addressed whether Rule 23 contains an ascertainability requirement for class certification.").

If heightened ascertainability becomes settled law in this Circuit, "the problem" addressed in *Amchem*—that small-value claims cannot sustain individual litigation, even where there has been real harm and serious malfeasance—will go unrectified in a large number of cases. That cannot be reconciled with the core purposes of Rule 23.[14]

Nor can such a result be squared with prior rulings of this Court. As *Karhu*'s concurrence noted, "class-action claims on *small-dollar products* where consumers and companies are unlikely to keep or retain records of purchases … which are routinely bought with cash …*are precisely the ones that the mechanism of the class-action device was designed to foster.*" *Karhu*, 621 F. App'x at 954 (Miller, J., concurring; emphases added); *see also Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529, 538 (11th Cir. 2017) (chastising district court for denying class certification without considering "the ways in which the high likelihood of a low per-class-member recovery militates in favor of class adjudication.").

*Klay v. Humana, Inc*., 382 f.3d 1241 (11th Cir. 2004), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co*., 553 U.S. 639 (2008), is instructive on this point. There, this Court explained that class actions often involve

---

[14] *See Mullins*, 795 F.3d at 658 (holding that "heightened ascertainability requirement… [has] the effect of barring class actions where class treatment is often most needed: in cases involving relatively low-cost goods or services, where consumers are unlikely to have documentary proof of purchase.").

"an aggregation of small individual claims, where a large number of claims are required to make it economical to bring suit. The plaintiff's claim may be so small, or the plaintiff so unfamiliar with the law, that he would not file suit individually....'" *Id.* at 1270 (citations omitted).

"This consideration," *Klay* observed, "supports class certification in cases where the total amount sought by each individual plaintiff is small in absolute terms." *Id.* at 1270 (citation omitted). "This is especially true," *Klay* added, "when the defendants are corporate behemoths with a demonstrated willingness and proclivity for drawing out legal proceedings for as long as humanly possible and burying their opponents in paperwork and filings." *Id.* at 1271. In such circumstances, a class action is the only way for consumers to be compensated and for wrongdoers to be deterred. *Id.*

This class action is a perfect example of what *Klay* was talking about. The misconduct at issue—the manufacture and sale of defective refrigerators that often malfunction and leak flammable gases that sometimes cause devastating fires—is serious. Yet the individual damages claims at issue, although surely significant to the owners of these refrigerators, are too small to sustain individual litigation.

Even if some intrepid individuals *were* capable of suing Dometic on their own, Dometic is exactly the type of "corporate behemoth" that has the capacity and the will to "bury [its] opponents in paperwork and filings" in order to avoid a payout.

*Klay*, 382 F.3d at 1271. And in fact Plaintiffs have been forced to vigorously litigate their claims against Dometic for years. Under these circumstances, only a "lunatic or a fanatic" would bother to bring an individual case to recover their damages. *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) (Posner, J.). And, importantly, only a class action has the power to deter other companies from engaging in similar misconduct in the future. *See, e.g.*, *Dickens*, 706 F. App'x at 538; *Jones v. DirecTV, Inc.*, 381 F. App'x 895, 896 (11th Cir. 2010) (availability of class action in line with public policy favoring the pursuit of small-value claims to "deter companies from misconduct"); *Dale v. Comcast Corp.*, 498 F.3d 1216, 1224 (11th Cir. 2007) (discussing class action role in curbing corporations' "unchecked market behavior"); *Newberg* §1:8 (describing class actions' deterrent function).

\* \* \*

In short, this is precisely the kind of case Rule 23 was designed to make possible. And yet, ironically, small-value cases are exactly the type of class actions most likely to fail a heightened-ascertainability approach. This Catch-22 is why so many federal courts of appeals have not hesitated to reject the heightened ascertainability rule of *Carrera* as inconsistent with both the language and spirit of Rule 23. This Court should do the same.

## B. Heightened Ascertainability Cannot Be Justified by Administrative Feasibility Considerations.

It is no response to argue that, however harsh the consequences on small-value claimants, heightened ascertainability is necessary to ensure that class actions are manageable. That argument has been rejected for a simple reason: Rule 23 *already* contains a mechanism for ensuring that class actions are manageable: the "superiority" requirement of Rule 23(b)(3). *See Mullins,* 795 F.3d at 662. This provision requires a court to consider whether the class device is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). One relevant factor is "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D).

This criterion is tailor-made for addressing any concerns about class action manageability that may relate to identifiability of class members. And, importantly, unlike the stand-alone ascertainability requirement, the manageability criterion is part of a *balancing* test that requires a court to consider the "relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay*, 382 F.3d at 1269.[15]

---

[15] *See also Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1358 (11th Cir. 2009); *Newberg* § 4:72 (discussing balancing test of manageability criterion).

This is a crucial point. The balancing test of Rule 23(b)(3) ensures that any difficulties that may be encountered with regard to manageability are *weighed against* the countervailing concern that, absent a class action, injury victims will not be able to recover at all. *See Mullins*, 795 F.3d at 664. And this Circuit has been clear that where, as here, a class action is the *only* way for class members to obtain justice, manageability will "rarely, if ever, be in itself sufficient to prevent certification of a class" if common issues otherwise predominate. *Klay,* 382 F.3d at 1272.[16]

In this respect, manageability and predominance go hand-in-hand. *See id.* at 1269 (noting that "the predominance analysis … has a tremendous impact on the superiority analysis … for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims.); *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc*., 601 F.3d 1159, 1184 (11th Cir. 2010) (same).

The central teaching of *Klay* and progeny is that where (as here) common issues predominate *and* the likely alternative to a class action is no litigation at all, manageability is "rarely, *if ever*," a reason to deny certification. *Klay*, 382 F.3d at

---

[16] Indeed, as one treatise observes, "courts within at least seven circuits have held that there is a presumption against dismissing a class action on manageability grounds or that such dismissals are disfavored." *Newberg* §4:72 (citing, inter alia, *Klay*, 382 F.3d at 1272).

1272 (emphasis added). And, crucially, predominance is not defeated simply by showing that the case will require some (or even substantial) individualized inquiry.[17]

Heightened ascertainability turns this regime on its head. Under *Karhu*, a court does not even have the discretion to undertake the superiority/manageability balancing inquiry unless the plaintiffs *first* prove, at the outset, that "identifying class members … does not require much, if any, individualized inquiry." *Karhu*, 621 Fed. App'x at 946. The administrative-feasibility requirement thus may preclude certification even though a class action would be determined manageable *and* superior to the alternatives under Rule 23(b)(3). That has never been the law in this Circuit—and it is contrary to the plain language of Rule 23.

\* \* \*

It is no small irony that heightened ascertainability actually makes class action practice *more* cumbersome for the parties and *less* streamlined for the courts. Under that approach, a court cannot even consider whether a class action is appropriately

---

[17] *See, e.g., Brown v. Electrolux Home Prods., Inc*., 817 F.3d 1225, 1239 (11th Cir. 2016); *Allapattah Services, Inc. v. Exxon Corp*., 333 F.3d 1248, 1261 (11th Cir. 2003), *aff'd sub nom. Exxon Mobil Corp. v. Allapattah Servs., Inc*., 545 U.S. 546 (2005) (noting that "numerous courts have recognized that the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate" and citing cases); *Newberg* § 4:54 (noting that the "black letter rule" in every circuit is that "individual damage calculations generally do not defeat a finding that common issues predominate").

defined, let alone meets the certification criteria of Rule 23, without *first* determining that class members can be identified in an administratively feasible fashion.

This, in turn, requires plaintiff's counsel to prove, prior to any judicial blessing of the class definition, that class members can be identified via some form of official record—records that typically are in the hands of the defendant and/or third-parties. Determining whether such records exist, and—if they do—obtaining them in discovery, can involve expensive and time-consuming litigation, often requiring extensive judicial oversight.[18]

Yet all this time and effort of proving "ascertainability" àla *Carrera* is wasted in cases where the class is ultimately found not to be certifiable for some reason having nothing to do with class-member identifiability. The far more sensible approach—and the only approach consistent with Rule 23—is to limit ascertainability to considerations relating to the class definition. *See* Wasserman, *Prose*, 50 Conn. L. Rev. at 722 ("Even if the strict approach does not defeat a class action, it requires class counsel to take more discovery regarding class membership earlier in the litigation, thereby increasing the cost of bringing a class action. That result is 'ironic' if the goal of the ascertainability requirement is efficiency and administrative convenience.") (footnotes omitted).

---

[18] *Karhu* permits self-identifying affidavits, but a plaintiff must first show that such affidavits are not "administratively infeasible or otherwise problematic." *Karhu*, 621 F. App'x at 948.

## C. Heightened Ascertainability Cannot Be Justified as Necessary to Protect the Rights of Class Members or Defendants.

Nor can heightened ascertainability be justified as necessary to protect the rights of absent class members or class action defendants.

### 1. Heightened Ascertainability is Not Necessary to Protect Absent Class Members' Notice and Opt-Out Rights.

Proponents of the *Carrera* approach have argued that ascertainability *must* require a showing of administratively feasible identifiability because, otherwise, class members' opt-out rights would be rendered meaningless—a result, the argument goes, that would violate due process. This argument fails on several fronts.

First, it wrongly assumes that due process requires "actual notice of the class action so that [class members] do not lose their opt-out rights." *Mullins*, 795 F.3d at 665. This, however, is not the law; instead, all that is required is the "best notice practicable under the circumstances"—a standard that allows publication notice in cases where class members cannot be identified by official records. *Id*. at 665 (citations omitted).

Moreover, as *Mullins* observed, "the stringent version of ascertainability loses sight of a critical feature of class actions for low-value claims like this one, where "only a lunatic or a fanatic would litigate the claim individually" and "so opt-out rights are not likely to be exercised by anyone planning a separate individual lawsuit." *Id*. (citation omitted).

40

"The heightened ascertainability approach," *Mullins* warned, "comes close to insisting on actual notice to protect the interests of absent class members, yet overlooks the reality that without certification, putative class members with valid claims would not recover anything at all." *Id*. at 666. "When it comes to protecting the interests of absent class members," the Seventh Circuit concluded, courts should not let the perfect become the enemy of the good." *Id*.[19]

In addition, the argument that ascertainability requires identifiability as a matter of due process improperly assumes that, unless class members are shown to be identifiable at class certification, there will never be any effort to determine their identities—and thus even those class members that *are* identifiable from official records will not receive the individualized notice that they deserve (and that due process requires).

This argument is based on a false premise: that the only time a trial court can assess the adequacy of counsel's plans for identifying and notifying class members

---

[19] *See also Briseno*, 844 F.3d at 1129 (heightened ascertainability "protect[s] a purely theoretical interest of absent class members at the expense of any possible recovery for all class members—in precisely those cases that depend most on the class mechanism."); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539–40 (6th Cir. 2012) ("[T]he size of a potential class and the need to review individual files to identify its members are not reasons to deny class certification. … It is often the case that class action litigation grows out of systemic failures of administration, policy application, or records management that result in small monetary losses to large numbers of people. To allow that same systemic failure to defeat class certification would undermine the very purpose of class action remedies.").

is at the certification stage—and, thus (the argument goes), unless a showing of identifiability is a prerequisite to class certification, notice will be inadequate in any class action containing at least some identifiable class members.

This premise ignores that the notice inquiry is *distinct* from the class-certification inquiry. *See* Fed. R. Civ. P. 23(c)(2). Thus, if the court in this case had certified the class as ascertainable, Plaintiffs would have then had a chance to (1) discover the identities of those class members (if any) that could be identified by Dometic's or non-party records; and (2) submit an appropriate notice plan for the court's consideration.

This makes sense from an efficiency standpoint: because, as noted above, class certification can be rejected for purely legal reasons—e.g., lack of predominance—requiring full-blown, pre-certification discovery into identifiability can be a wasted effort for all concerned. It streamlines matters to wait to conduct such discovery until *after* class certification, when the court has found that the class is properly defined and that the other minimum legal requirements for certification have been met.

### 2. Heightened Ascertainability is Not Necessary to Protect Absent Class Members from Dilution of their Recoveries.

Nor can heightened ascertainability be justified on the ground that it is necessary to protect class members from having their recoveries diluted by

fraudulent claims (one of the concerns used to justify heightened ascertainability in *Carrera*, 727 F.3d at 310).

As the Seventh Circuit concluded, given the historically low claims rates in consumer class actions, this concern is unrealistic. *Mullins*, 795 F.3d at 667 ("only a tiny fraction of eligible claimants ever submit claims for compensation in consumer class actions.") (citation omitted); *see also Briseno*, 844 F.3d at 1130 (noting same); Jordan Elias, *The Ascertainability Landscape and the Modern Affidavit*, 84 TNLR 1, 51 (2016) (describing false claims as "outliers"); Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 Fla. L. Rev. 71, 119-20 (2007) (describing low participation rates). Beyond that, courts have ample tools to combat the risk of fraud, as Mullins observed. *See* 795 F.3d at 667. In this case, for example, current-owner class members could submit the serial numbers of their refrigerators and former owners could submit third-party documentation, such as vehicle registration, which the defendant could confirm against its own records of serial numbers and sales to RV manufacturers.

Finally, even if the risk that members of the public may falsely pose as class members were a real concern in consumer cases (and it is not), the "dilution argument" fails to account for the fact that class certification likely provides "the only meaningful possibility for bona fide class members to recover anything at all."

*Id.* at 668. Given that, to deny class certification on the ground that a class member's claim *might* be diluted would mean that the class member recovers nothing at all—a nonsensical result if ever there was one. *Id.*

### 3. Heightened Ascertainability is Not Necessary to Protect Defendants.

Nor can heightened ascertainability be justified on the ground that it is needed to protect the rights of class action *defendants*. This argument, too, has been thoroughly vetted and rejected by other courts of appeals and numerous scholarly commentators. *E.g., Mullins*, 795 F.3d at 670; *Briseno*, 844 F.3d at 1131-32; Wasserman, *Prose*, 50 Conn. L. Rev. at 727-30; Elias, *The Ascertainability Landscape and the Modern Affidavit*, 84 TNLR at 43-46.

As the Seventh Circuit has observed, while a defendant has a due process right to challenge the plaintiff's evidence at any stage of the case, "[t]hat does not mean a court cannot rely on self-identifying affidavits, subject as needed to audits and verification procedures and challenges, to identify class members." *Mullins*, 795 F.3d at 669 (citations omitted).

Rather, the use of such affidavits to identify class members does not deprive defendants of any rights "so long as the defendant is given a fair opportunity to challenge the amount owed during the claims process." *Id.* at 671. A defendant that wants to mount such a challenge at the remedial stage is free to do so—and, as *Mullins* observed, "we should not underestimate the ability of district courts to

develop effective auditing and screening methods tailored to the individual case." *Id*. at 669.

Any concerns about the rights of class action defendants are particularly misplaced in a case where, as here, "the total amount of damages can be determined in the aggregate." *Id*. at 670. Plaintiffs allege that *all* of the specified models are defective, which depreciated the value of the refrigerators unbeknownst to the buyers. Dometic knows exactly how many of these refrigerators it sold during the class period—and nothing will change that.[20] Plaintiffs' damages model, moreover, which encompasses losses to both original and subsequent consumer purchasers, calculates aggregate damages based on total refrigerators sold, not the number of buyers.[21] In this situation, "the identity of particular class members does not implicate the defendant's due process interest at all. The addition or subtraction of individual class members affects neither the defendant's liability nor the total amount of damages it owes to the class." *Mullins*, 795 F.3d at 670.

\* \* \*

In sum, there is no solid justification for heightened ascertainability. The traditional, class-definition-focused approach to ascertainability has worked just fine

---

[20] *See* Doc. 371, Ex. 16 (Kwon Report) at 10–13, 18–20 (estimating number of subject refrigerators sold using Dometic's sales data).

[21] *See* Doc. 346, Ex. 6 ¶¶ 97–101(Glasgow Report).

in this Court, and in courts across America, for decades. The brief, ill-considered experiment with heightened ascertainability that started in the Third Circuit has been rejected by every federal appellate court to consider the question, and has largely been abandoned in the Third Circuit itself. This Court should follow that trajectory and make clear that it applies the traditional approach to ascertainability that has served courts so well since Rule 23 was first created in 1966.

### III. EVEN IF HEIGHTENED ASCERTAINABILITY IS APPROPRIATE, THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING CERTIFICATION OF THIS CLASS.

If this Court concludes that heightened ascertainability is warranted, it should still reverse the decision below, because the district court erred in finding that Plaintiffs failed to show an administratively-feasible method of identifying class members.

Not only is this an ideal case for the use of self-identifying affidavits to determine class membership, but Dometic's two prior recalls show that many or most class members can *also* be identified by some form of official records, either defendant's own or those of third-parties. *See Cox*, 330 F.R.D. at 331 (holding "[t]hat individual dealerships maintained different forms or types of databases to memorialize this information does not render the process of identifying class membership administratively infeasible."). The district court's failure to recognize these facts was reversible error.

## A. The District Court Erred in Rejecting Self-Identifying Affidavits to Determine Class Membership.

First, it is important to remember that *Karhu* did not rule out self-identifying affidavits to prove ascertainability. Instead, *Karhu* held that such affidavits *could* be used to demonstrate class membership if the Plaintiffs establish "that self-identification is administratively feasible and not otherwise problematic." *Id*. at 948. Because the *Karhu* plaintiff did not even attempt to make such a showing, the majority held that the district court did not err in denying certification. *Id.* at 949. *Karhu*, then, involved a failure of proof on plaintiff's part when it came to proving identifiability.

Plaintiffs here, in contrast, *did* argue for self-identifying affidavits as a means of class-member identification—and they explained why the use of such affidavits *would* be administratively feasible. *See* Doc. 45 at 12; Doc. 386 at 5-6. Doc. In particular, Plaintiffs emphasized that this case involves *refrigerators* costing upwards of one thousand dollars apiece, each of which is marked with a unique serial number, just like a car. *Id. See also* Doc. 300, ¶199 fig. 3.

Customers who still own their refrigerators have a ready way to prove it, and those who sold their RVs containing a Dometic refrigerator can prove that fact as well. And, because this case involves high-value products with unique serial numbers, the risk of misidentification or fraud is negligible.

Classes like this are ascertainable under any definition of that term. In fact, courts routinely approve claims procedures in class action settlements involving high-value products with specific identifying information (like serial numbers) precisely because such cases do *not* present any problems of identifiability. *See, e.g., Burrow v. Forjas Taurus S.A*., No. 16-21606-Civ, 2019 U.S. Dist. LEXIS 63893, at *18 (S.D. Fla. Mar. 15, 2019) (relying on *Karhu* and noting that the "inclusion of the serial number makes the class [of revolver owners] ascertainable.").[22]

---

[22] *See also Carlotti v. ASUS Computer Int'l*, No. 18-cv-03369-DMR, 2019 WL 6134910, at *2 (N.D. Cal. Nov. 19, 2019) (approving settlement of class action involving laptops where class members who did not register their laptops with defendants could provide serial number); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig*., No. 1:09-WP-65000, 2016 WL 5338012, *14 (N.D. Ohio Sept. 23, 2016) (approving class action settlement of case involving washing machines identified with individual serial numbers that could be used to prove class membership); *Tait v. BSH Home Appliances Corp*., No. SACV 10-0711-DOC (ANx), 2015 WL 4537463, *3 (C.D. Cal. July 27, 2015) (approving settlement of class action involving defective washing machines where class members could provide proof of ownership through defendant's warranty records or "through other means (such as a receipt, invoice, credit card statement, or picture of their washer's serial number) along with a statement under penalty of perjury that they were the original purchaser of the washer."); *In re Haier Freezer Consumer Litigation*, No. 5:11-CV-02911-EJD, 2013 WL 2237890, *3 (N.D. Cal. May 21, 2013) (approving class settlement involving defective freezers where class members could provide model and serial serial number); *In re Apple Iphone Prods. Liab. Litig.*, No. 5:10-md-2188 RMW, 2012 WL 3283432, *3 (N.D. Cal. Aug. 10, 2012) (approving settlement of class action involving iPhones where class members could identify phones by serial number); *Garza v. Sporting Goods Properties*, CIVIL ACTION NO. SA-93-CA-1082, 1996 WL 56247, **9-10 (W.D. Tex. Feb. 6, 1996) (approving settlement involving shotguns that "have a serial number imprinted on the receiver, and the validity of the claim cannot be disputed."); *Parkinson v. Hyundai Motor Am.*,

In short, this is the exactly the kind of case where the use of self-identifying affidavits is "administratively feasible and not otherwise problematic." *Karhu*, 621 F. App'x at 948. The lower court's failure to recognize that fact is reason enough to reverse the decision below.

### B. The District Court Erred in Rejecting Plaintiff's Showing that Class Members Can *Also* Be Identified Using Official Records.

The district court further erred in rejecting Plaintiffs' showing that class members can *also* be identified using official records—records that could have served as a cross-check on the accuracy of self-identifying affidavits, as well as a means of notifying the class. *See Reyes v. BCA Fin. Servs., Inc.*, No. 16-24077-CIV, 2018 WL 3145807, at *11 (S.D. Fla. June 26, 2018) (relying on *Karhu* and holding that combining the "use of a defendant's records and potential class members' affidavits … may be used so long as the records 'are in fact useful for identification purposes' and 'self-identification is administratively feasible and not otherwise

---

258 F.R.D. 580, 594 (C.D. Cal. 2008) (finding class ascertainable where definition identified automobile make, model, and production period); *see also GMC v. Bryant*, 285 S.W.3d 634, 645-46 (Ark. 2008) (affirming class certification over defendant's objections because "General Motors admitted it had the ability to provide personal information regarding the original vehicle purchasers via its warranty database, as well as current vehicle owners via vehicle-identification-number searches conducted by third-party vendors. In addition, …General Motors had previously conducted a recall on its manual-transmission version of the class vehicles, which demonstrated the administrative feasibility of General Motors' ability to not only identify class members, but also its ability to contact them.").

problematic.'") (quoting *Karhu*, 621 F. App'x at 946). *See also Owens*, 323 F.R.D. at 416 (granting class certification and noting: "As this process explains, individual records will have to be examined in order to determine class membership. That alone is not fatal.").

As Plaintiffs argued during class certification, Dometic's refrigerators have already been the subject of two nationwide recalls, during which Dometic, by its own admission, was able to notify "consumers owning *any* RV sold by any of the OEMs it had done business with," thereby ensuring that many (if not most) consumers that *did* own an RV with one of Dometic's refrigerators received actual notice of the recalls. Doc. 373 at 13 (emphasis in original). In connection with those recalls, Dometic advised NHTSA that it had the ability to "*ensure notification of all affected owners*.'" Doc. 386 at 5 (emphasis added).

These facts alone should have been more than adequate to satisfy the ascertainability standard of *Karhu*. If the point of heightened ascertainability is to weed out "administratively-infeasible" classes, then this class should have been certified, because Dometic has already *shown* that it can notify many, if not most, of its customers. Requiring Plaintiffs to actually produce Dometic's *own* records in order to demonstrate what Dometic's *own* prior conduct has already demonstrated— and denying class certification based on their failure to do so—elevates form over substance in the worst sort of way.

And if the point of heightened ascertainability is to protect *defendants*, then this lawsuit should not have given the court the slightest pause. First, concerns about defendants' due-process rights are particularly misplaced in a case like this one, where the aggregate sales can be determined by defendant's own records. *See, e.g., Mullins*, 795 F.3d at 699. Unlike many cases, the process of identifying the allegedly defective products here is straight-forward because, as Plaintiffs' expert engineers demonstrated, all models included in the class possess commonly designed cooling units containing the same defect.

Second, and just as important, unlike in a class action involving over-the-counter products, the vast majority of class members here *will* be identifiable based on some official record—Dometic's own product registration records, a receipt (for an individual refrigerator purchase), vehicle registration records (when bundled with an RV purchase), an insurance form, third-party sales records—or will be able to prove their membership in the class by simply submitting a photo of their refrigerator (and its serial number) along with a claim form.

On these facts, Dometic cannot plausibly claim that allowing this case to proceed as a class action will somehow deprive it of its due process right to mount an effective defense or cause it to pay out more than its total damages.  Clearly, it will not.

Dometic's answer to these arguments at class certification was to state that its prior efforts to notify its customers of the prior recalls was "overinclusive," because Dometic was only able to notify consumers "owning any RV sold by any of the OEMs" Dometic had done business with, and some of those RVs did not have refrigerators made by Dometic. Doc.373 at 13. Thus, said Dometic, it sent out 3 million notices to a customer base of only 1.6 million, yielding a total response of 700,000 claims. *Id*.

These statements should have sealed the deal in *favor* of finding ascertainability under *Karhu*. Dometic's ability to directly notify so many of its customers *and* achieve such a high response rate is itself an astonishing fact, in view of the often "tiny" claims rates in consumer class actions. *Mullins*, 795 F.3d at 667.

That Dometic's prior notification efforts might have been overinclusive does not render this class action administratively infeasible or otherwise improper; it only means that some people will receive notice that do not actually own a Dometic refrigerator. Any such individuals claiming a recovery during the damages phase of the case can easily be weeded out by the various sophisticated techniques that claims administrators regularly deploy to "discourage, identify, and reject fraudulent claims." Wasserman, *Prose*, 50 Conn. L. Rev. at 727-30. *See also Manual For Complex Litigation*, § 21.66 (describing audit and review procedures, random sampling techniques, and field audits to screen out fraudulent or inaccurate claims).

\* \* \*

In short, even if the district court did not err in applying a heightened ascertainability standard in this case, it most certainly erred in finding this class non-ascertainable under *Karhu*. The lower court's denial of class certification should be reversed.

## IV.   THE DISTRICT COURT ERRED IN DISMISSING THE CASE FOR LACK OF JURISDICTION AFTER DENYING CLASS CERTIFICATION.

Finally, the district court erred when it dismissed the case for lack of subject matter jurisdiction in light of its class certification denial. Dometic affirmed that it agrees with Plaintiffs that the dismissal was a clear legal error in contradiction to *Wright Transportation, Inc., v. Pilot Corp.*, 841 F. 3d 1266, 1271–72 (11th Cir. 2016), where this Court affirmed "that subject matter jurisdiction [under CAFA] is not destroyed when a district court denies class certification." *See* Doc. 430.

## CONCLUSION

Based on the foregoing, the Court should (1) clarify, consistent with this Circuit's pre-*Karhu* approach, that a class action is ascertainable if the class is defined in clear and objective terms; (2) reverse the district court's denial of class certification; and (3) remand for further proceedings consistent with the Court's ruling.

Respectfully Submitted,

By: */s/ Adam Moskowitz*
    Adam M. Moskowitz

# CERTIFICATE OF COMPLIANCE

I hereby certify, on this 30th day of January, 2020, that:

1.     This document complies with the type-volume limitation of  Federal Rule of Appellate Procedure 32(a)(7), excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), because its numbered pages contain 12,626 words.

2.     This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Times New Roman font.

# CERTIFICATE OF SERVICE

The undersigned certifies that on January 30, 2020, this brief was filed with the Clerk of the Court using CM/ECF and served on counsel for Defendants electronically via CM/ECF and that seven copies will be sent to the Clerk of the Court by FedEx for delivery within three days.

Respectfully Submitted,

By: */s/ Adam Moskowitz*
Adam M. Moskowitz

| | |
|---|---|
| **THE MOSKOWITZ LAW FIRM, PLLC**<br>Adam Moskowitz<br>Florida Bar No. 984280<br>Howard M. Bushman<br>Florida Bar No. 0364230<br>Adam A. Schwartzbaum<br>Florida Bar No. 93014<br>Joseph M. Kaye<br>Florida Bar No. 117520<br>2 Alhambra Plaza, Suite 601<br>Coral Gables, FL 33134<br>Telephone: (305) 740-1423<br>Email: adam@moskowitz-law.com<br>Email: howard@moskowitz-law.com<br>Email: adams@moskowitz-law.com<br>Email: joseph@moskowitz-law.com<br>Secondary: dione@moskowitz-law.com<br>Secondary: rejane@moskowitz-law.com<br><br>*Co-counsel for Plaintiffs* | **ZIMMERMAN REED, LLP**<br>Hart L. Robinovitch<br>(admitted *pro hac vice*)<br>hart.robinovitch@zimmreed.com<br>14646 N. Kierland Blvd., Suite 145<br>Scottsdale, AZ 85254<br>(480) 348-6400 Telephone<br>(480) 348-6415 Facsimile<br><br>Caleb Marker<br>(admitted *pro hac vice*)<br>caleb.marker@zimmreed.com<br>2381 Rosecrans Ave., #328<br>Manhattan Beach, CA 90245<br>(877) 500-8780 Telephone<br>(877) 500-8781 Facsimile<br><br>*Co-counsel for Plaintiffs* |
| **SEARCY DENNEY SCAROLA BARNHART & SHIPLEY PA**<br>Jack Scarola, Esq.<br>Florida Bar No. 169440<br>jsx@searcylaw.com<br>2139 Palm Beach Lakes Blvd.<br>West Palm Beach, FL 33409<br>Telephone: (561) 686-6300<br>Fax: (561) 383-9451<br><br>*Co-counsel for Plaintiffs* | **HAGENS BERMAN SOBOL SHAPIRO LLP**<br>Steve W. Berman<br>Thomas E. Loeser<br>(admitted *pro hac vice*)<br>Barbara Mahoney<br>(admitted *pro hac vice*)<br>1918 Eighth Avenue, Suite 3300<br>Seattle, WA 98101<br>Telephone: (206) 623-7292<br>Facsimile: (206) 623-0594<br>steve@hbsslaw.com<br>toml@hbsslaw.com<br>barbara@hbsslaw.com<br><br>*Co-counsel for Plaintiffs* |

| LAW OFFICES OF TERRENCE A. BEARD<br>Terrence A. Beard<br>(admitted *pro hac vice*)<br>525 Marina Blvd<br>Pittsburg, CA 94565<br>Telephone: (925) 778-1060<br>Facsimile: (925) 473-9098<br>TBeard1053@aol.com<br><br>*Co-counsel for Plaintiffs* | |