No. 19-13242

─────────────

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

─────────────

BRADLEY VARNER, ET AL.,

*Plaintiffs-Appellants,*

v.

DOMETIC CORPORATION,

*Defendant-Appellee.*

─────────────

On Appeal from the United States District Court
for the Southern District of Florida,
Civil Action No. 16-22482-Civ-Scola

─────────────

**BRIEF OF AMICUS CURIAE PUBLIC CITIZEN
IN SUPPORT OF PLAINTIFFS-APPELLANTS
AND SUPPORTING REVERSAL**

─────────────

Allison M. Zieve
Scott L. Nelson
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

Counsel for Amicus Curiae
Public Citizen

February 6, 2020

**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT**

Pursuant to Local Rule 26.1-2, the following parties, not identified in the earlier-filed briefs, have an interest in the outcome of this appeal:

- Nelson, Scott L. – counsel for Amicus Curiae

- Public Citizen, Inc. – Amicus Curiae

- Public Citizen Litigation Group – law firm for Public Citizen

- Zieve, Allison M. – counsel for Amicus Curiae

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel certifies that amicus curiae Public Citizen is a nonprofit, non-stock corporation. It has no parent corporations, and no publicly traded corporations have an ownership interest in it.

/s/ Allison M. Zieve
Allison M. Zieve
Attorney for Public Citizen

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ......................................................C-1

TABLE OF CITATIONS ........................................................................... ii

INTEREST OF AMICUS CURIAE ........................................................1

STATEMENT OF THE ISSUE.................................................................2

SUMMARY OF ARGUMENT ................................................................2

ARGUMENT ........................................................................................3

I.    Rule 23 does not include an administrative feasibility threshold. ....................5

II.   The district court's approach, if affirmed, would harm consumers without
      advancing any legitimate countervailing interest...............................................7

CONCLUSION......................................................................................16

CETIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF CITATIONS

## Cases

*Amchem Products, Inc. v. Windsor*,

    521 U.S. 591 (1997)...............................................................5, 7

*Birchmeier v. Caribbean Cruise Line, Inc.*,

    302 F.R.D. 240 (N.D. Ill. 2014) ...................................................13

*Brecher v. Republic of Argentina*,

    806 F.3d 22 (2d Cir. 2015) ...........................................................4

* *Briseno v. ConAgra Foods, Inc.*,

    844 F.3d 1121 (9th Cir. 2017) ..........................4, 5, 6, 9, 10, 12, 16

*Byrd v. Aaron's, Inc.*,

    784 F.3d 154 (3d Cir. 2015) ....................................................4, 12

*Carrera v. Bayer Corp.*,

    727 F.3d 300 (3d Cir. 2013) ....................................................4, 14

*Carriuolo v. General Motors Co.*,

    823 F.3d 977 (11th Cir. 2016) .......................................................3

*In re Community Bank of Northern Virginia*,

    795 F.3d 380 (3d Cir. 2015) .........................................................4

*Daniels v. Hollister Co.*,

    113 A.3d 796 (N.J. App. 2015) ...................................................13

*Eisen v. Carlisle & Jacquelin,*

    417 U.S. 156 (1974)........................................................................9

*Hughes v. Kore of Indiana Enterprise, Inc.,*

    731 F.3d 672 (7th Cir. 2013) ......................................................7, 9

*Karhu v. Vital Pharmaceuticals, Inc.,*

    621 F. App'x 945 (11th Cir. 2015)................................................4

*Langan v. Johnson & Johnson Consumer Cos.,*

    897 F.3d 88 (2d Cir. 2018) ..........................................................10

*Mullane v. Central Hanover Bank & Trust Co.,*

    339 U.S. 306 (1950)......................................................................10

\* *Mullins v. Direct Digital, LLC,*

    795 F.3d 654 (7th Cir. 2015) ..........................4, 5, 6, 9, 11, 15, 16

*Palmer v. Gentek Building Products, Inc.,*

    936 N.W.2d 552 (N.D. 2019) ......................................................14

*Papasan v. Dometic Corp.,*

    2019 WL 3317750 (S.D. Fl. 2019).......................................3, 8, 11

*In re Petrobras Securities,*

    862 F.3d 250 (2d Cir. 2017) ...................................................5, 6, 8

*Rikos v. Procter & Gamble Co.,*

    799 F.3d 497 (6th Cir. 2015) ........................................................5

*Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*,

    821 F.3d 992 (8th Cir. 2016) ............................................................5

*Seeligson v. Devon Energy Production Co.*,

    761 F. App'x 329 (5th Cir. 2019) ....................................................5

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*,

    559 U.S. 393 (2010) ..........................................................................8

*Stephenson v. Dow Chemical Co.*,

    273 F.3d 249 (2d Cir. 2001) ...........................................................14

*Twigg v. Sears, Roebuck & Co.*,

    153 F.3d 1222 (11th Cir. 1998) .......................................................14

*Tyson Foods, Inc. v. Bouaphakeo*,

    136 S. Ct. 1036 (2016) ..............................................................11, 13

*United States v. Castro*,

    837 F.2d 441 (11th Cir. 1988) ..........................................................5

*United States v. Spoor ex rel. Louise Paxton Gallagher Revocable Trust*,

    838 F.3d 1197 (11th Cir. 2016) ........................................................6

*In re Visa Check/MasterMoney Antitrust Litigation*,

    280 F.3d 124 (2d Cir. 2001) ...........................................................13

**Federal Rules**

Fed. R. Civ. P. 23(a) ................................................................................7

Fed. R. Civ. P. 23(b)(3) ..................................................................6, 7, 11

iv

Fed. R. Civ. P. 23(c)(1)(B) ........................................................3

Fed. R. Civ. P. 23(c)(2)(B) ........................................................9

Fed. R. Civ. P. 23(c)(3)(A) ........................................................3

Fed. R. Civ. P. 23(d) ...............................................................12

Fed. R. Civ. P. 23, advisory committee's notes to 1966 amendment .....................16

**Miscellaneous**

Fed. Judicial Ctr., *Manual for Complex Litigation, Fourth* (2004)..................10, 12

*McLaughlin on Class Actions* (11th ed. 2014) ........................................4

*Moore's Federal Practice* (3d ed. 1997) .................................................7

Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements*

    *and Their Fee Awards*, 7 J. Empirical. L. Stud. 811 (2010) ........................15

William Rubenstein, et al., *Newberg on Class Actions* (5th ed. 2013) ................3, 7

Geoffrey C. Shaw, Note, *Class Ascertainability*,

    124 Yale L.J. 2354 (2015) .............................................................9

NERA Economic Consulting, *Recent Trends in Securities Class Action*

    *Litigation: 2015 Full-Year Review* (2016),

    http://www.nera.com/content/dam/nera/publications/2016/2015_

    Securities_Trends_Report_NERA.pdf ........................................................15

# INTEREST OF AMICUS CURIAE[1]

Founded in 1971, Public Citizen is a nonprofit consumer advocacy organization with members and supporters nationwide. Public Citizen advocates before Congress, administrative agencies, and the courts on a wide range of issues, and works for enactment and enforcement of laws protecting consumers, workers, and the public. Public Citizen often represents its members' interests in litigation and as amicus curiae. Public Citizen believes that class actions are an important tool for seeking justice where a defendant's wrongful conduct has harmed many people and resulted in injuries that are large in the aggregate, but not cost-effective to redress individually. In that situation, a class action offers the best means for both individual redress and deterrence, while also serving the defendant's interest in achieving a binding resolution of the claims on a broad basis, consistent with due process. The interests of both named and absent class members, defendants, the judiciary, and the public at large are best served by adherence to the principles incorporated in Federal Rule of Civil Procedure 23. Public Citizen has sought to advance this view by participating, either as counsel or amicus curiae, in many

---

[1] All parties have consented to the filing of this amicus brief. No party's counsel authored this brief in whole or in part, and no party or party's counsel made a monetary contribution to fund the preparation or submission of this brief. No person or entity other than amicus made a monetary contribution to the preparation or submission of this brief.

significant class actions, including *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), and *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). Public Citizen has also appeared as amicus curiae in several appeals addressing "ascertainability."

## STATEMENT OF THE ISSUE

Whether the Court should engraft onto Federal Rule of Civil Procedure 23 an implied "administrative feasibility" requirement as a threshold prerequisite to class certification.

## SUMMARY OF THE ARGUMENT

Courts have long recognized that class certification is premised on a clearly defined class, based on objective criteria. A clear class definition prevents vague or subjective classes (*e.g.*, persons "annoyed" by a manufacturer's return policy), as well as classes defined entirely by success on the merits, so-called fail-safe classes (*e.g.*, persons who establish that they were defrauded by defendant's misrepresentations). Here, the district court did not suggest that the class that plaintiff Papasan seeks to represent—made up of people in specified states who purchased certain Dometic refrigerators built after January 1, 1997—fails to satisfy this well-settled standard.

Nonetheless, the district court denied class certification after applying a threshold prerequisite that appears nowhere in Rule 23, one that, if adopted by this Court, would doom both this class action and the majority of low-value consumer

2

class actions: The court held that a plaintiff seeking class certification must prove, at the outset, an "administratively feasible method" to identify class members; at the same time, the court rejected the use of sworn affidavits to identify class members as "problematic." *Papasan v. Dometic Corp*., 2019 WL 3317750, at *7 (S.D. Fl. 2019). This Court should join the majority of courts of appeals that have addressed this precondition by rejecting Dometic's request to graft a threshold showing, not stated in Federal Rule 23, onto the Rule's already rigorous requirements, and the Court should disapprove the district court's vague objections to the use of affidavits as evidence of class membership.

## ARGUMENT

This Court, like many others, has held that class certification is appropriate only when a class is "adequately defined and clearly ascertainable." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016) (quoting *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012)); *see* William Rubenstein, et al., *Newberg on Class Actions* § 3.3 (5th ed. 2013) ("All courts essentially focus on the question of whether the class can be ascertained by objective criteria."). The so-called ascertainability requirement is based on Rule 23(c)(1)(B), which requires that a court order certifying a class "must define the class." A clear and objective definition enables courts to identify who is bound by a judgment, as Rule 23(c)(3)(A)

requires, and thus to enforce the res judicata effect of a final judgment against the class members as well as defendants.

As several courts of appeals have held, ascertainability, as that term is used in the class-action context, does not mean that each class member must be individually identifiable at the time of class certification. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017); *Brecher v. Republic of Arg.*, 806 F.3d 22, 25 n.2 (2d Cir. 2015) (quoting 1 *McLaughlin on Class Actions* § 4:2 (11th ed. 2014) ("The class need not be so finely described, however, that every potential member can be specifically identified at the commencement of the action; it is sufficient that the general parameters of membership are determinable at the outset.")); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). Nonetheless, in *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013), the Third Circuit seemed to adopt a new ascertainability standard, pursuant to which the plaintiff must show at the time of class certification that each class member is individually identifiable, *id*. at 307–08. Although an unpublished decision of this Court suggests agreement with that approach, *see Karhu v. Vital Pharm, Inc.*, 621 F. App'x 945, 947–50 (11th Cir. 2015), the Court chose not to make that decision precedential. And the Third Circuit has since been careful to limit *Carrera* to its facts. *See In re Cmty. Bank of N. Va.*, 795 F.3d 380, 397 (3d Cir. 2015); *Byrd v. Aaron's Inc*., 784 F.3d 154, 165 (3d Cir. 2015).

Meanwhile, the Second, Fifth, Sixth, Seventh, Eighth, and Ninth Circuits have considered and rejected the notion that an administratively feasible method for identifying class members be set forth as a prerequisite to class certification. *See Seeligson v. Devon Energy Prod. Co*., 761 F. App'x 329, 334 (5th Cir. 2019); *In re Petrobras Sec*., 862 F.3d 250, 264 (2d Cir. 2017); *Briseno*, 844 F.3d at 1133; *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016); *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 525 (6th Cir. 2015); *Mullins*, 795 F.3d at 658. This Court should do the same.

## I.    Rule 23 does not include an administrative feasibility threshold.

The Supreme Court has instructed that Rule 23 "sets the requirements [the courts] are bound to enforce" when considering class certification. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The text of the rule "limits judicial inventiveness. Courts are not free to amend a rule outside the process Congress ordered." *Id*.

Rule 23(a), titled "Prerequisites," does not include "administrative feasibility." The Rule lists "four threshold requirements applicable to all class actions." *Amchem*, 521 U.S. at 613. The four threshold requirements—numerosity, commonality, typicality, and adequacy of representation—are exclusive. Under the doctrine "expressio unius est exclusio alterius," the enumeration of four "prerequisites" "implies the exclusion of [others]." *United States v. Castro*, 837 F.2d

441, 442 (11th Cir. 1988) (applying doctrine); *see also United States v. Spoor ex rel. Louise Paxton Gallagher Revocable Tr.*, 838 F.3d 1197, 1203 (11th Cir. 2016) ("The canon of statutory construction that the inclusion of one implies the exclusion of others is well-established." (citation omitted)). As the Ninth Circuit has explained, because administrative feasibility is not listed among Rule 23(a)'s list of exclusive prerequisites, it is not a prerequisite to class certification under the Rule. *Briseno*, 844 F.3d 1125–26.

Likewise, a heightened ascertainability requirement cannot be located in the Rule 23(b)(3) factors. "Nothing in Rule 23 mentions or implies this heightened [ascertainability] requirement under Rule 23(b)(3), which [would have] the effect of skewing the balance that district courts must strike when deciding whether to certify classes." *Mullins*, 795 F.3d at 658. Instead, the administrative feasibility of identifying class members is one factor subsumed within the requirement that a Rule 23(b)(3) class action must be superior to individual adjudication, considering, among other things, the relative fairness and efficiency of class proceedings in light of a number of relevant considerations, some examples of which are set forth in the Rule. *See* Fed. R. Civ. P. 23(b)(3)(A)–(D). A court's consideration of these factors entails a flexible balancing of sometimes competing considerations, not a rigid elevation of a single consideration above all others. *Mullins*, 795 F.3d at 658; *see In re Petrobras Sec.*, 862 F.3d at 268.

An administrative feasibility prerequisite is also contrary to the policies underlying Rule 23. When a company exposes many people to the same unlawful practice, a class action is often the only effective way to redress the wrongdoing. As the Supreme Court has observed, "small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)). "The policy at the very core of the class action mechanism is to overcome [this] problem." *Id*. "The smaller the stakes to each victim of unlawful conduct, the greater the economies of class action treatment and the likelier that the class members will receive some money rather than (without a class action) probably nothing." *Hughes v. Kore of Indiana Enter., Inc*., 731 F.3d 672, 675 (7th Cir. 2013). In such cases, class actions offer the only means for achieving individual redress and deterrence of wrongful conduct.

## II.    The district court's approach, if affirmed, would harm consumers without advancing any legitimate countervailing interest.

The focus of a legitimate ascertainability inquiry is a clear class definition based on objective criteria. 1 *Newberg on Class Actions* § 3:2; 5 *Moore's Federal Practice* § 23.21[1] (3d ed. 1997). A class, so defined, that satisfies the threshold standards set forth in Rule 23(a)(2), as well as Rule 23(b)(3)'s additional requirements that common issues predominate and that class resolution is superior

to individual litigation, is entitled to be certified. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 399 (2010).

In this case, the district court's rigid application of its "administrative feasibility" test was incompatible with "the careful balance struck in Rule 23." *In re Petrobras Sec.*, 862 F.3d at 268. The court did not suggest that the class definition was inadequate. Instead, the court found that reliance on Dometic's recall list and class member affidavits to identify members would be "insufficient" and "otherwise problematic." *Papasan*, 2019 WL 3317750, at *7. Those vaguely defined concerns, however, do not support denial of certification of the clearly defined class proposed here. If adopted, the district court's approach would make it impossible for many people injured by deceptive marketing or defective products to obtain relief, would eliminate an important deterrent of illegal conduct, and yet would do nothing to protect the legitimate interests of absent class members or defendants.

**A.** The court rejected plaintiffs' suggestion of identifying class members by providing notice to the individuals on Dometic's recall list because that list includes many people who would fall outside the class and because the court found that identifying class members from among those on the recall list was not "feasible" or not "otherwise problematic." *Id*. The district court's concerns that defendant Dometic's records are insufficient to determine class membership definitively and

8

that verifying class membership with class-member affidavits or by other means would be inadequate to ensure proper identification are misplaced.

To begin with, Rule 23's notice provision, Rule 23(c)(2)(B) provides that, for any class certified under Rule 23(b)(3), the court must direct to class members the "best notice that is practicable under the circumstances, including individual notice to all *members who can be identified through reasonable effort*" (emphasis added). The Rule thus specifically recognizes that efforts to identify class members might be imperfect. *See Briseno*, 844 F.3d at 1129 (explaining that Rule 23 "recognizes it might be *impossible* to identify some class members for purposes of actual notice" (quoting *Mullins*, 795 F.3d at 665)); Geoffrey C. Shaw, Note, *Class Ascertainability*, 124 Yale L.J. 2354, 2367 (2015).

Thus, the possibility that notice will be overinclusive, reaching some consumers who are not class members, does not weigh against class certification. When class members' names and addresses are known, or are knowable with reasonable effort, notice generally is accomplished by first-class mail. *See, e.g.*, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174–75 (1974). When class members' names and addresses are not known, notice is provided through alternative means such as notification through third parties, paid advertising, or posting in places frequented by class members—all means that reach many people outside the class. *See, e.g.*, *Hughes*, 731 F.3d at 677 (in case involving the claims of ATM users,

9

approving a notice plan consisting of "sticker notices on [the defendant's] two ATMs and publication of a notice in the principal Indianapolis newspaper and on a website"). The constitutional propriety of these alternative notice methods has been settled law for more than 60 years. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314–19 (1950); *see also* Fed. Judicial Ctr., *Manual for Complex Litigation, Fourth* § 21.311, at 292 (2002) (discussing forms of non-first-class-mail notice regularly approved by courts "when individual names or addresses cannot be obtained through reasonable efforts" and citing representative cases).

After providing such notice, allowing class members to come forward to identify themselves, subject to reasonable verification measures, necessarily follows. And affidavits, a well-established and reliable form of proof in civil litigation, offer a feasible means of doing so. "Given that a consumer's affidavit could force a liability determination at trial without offending the Due Process Clause," there is "no reason to refuse class certification simply because that same consumer will present her affidavit in a claims administration process after a liability determination has already been made." *Briseno*, 844 F.3d at 1132; *see Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 91 n.2 (2d Cir. 2018) ("Since we think it is more likely that a consumer would remember the time frame in which he purchased a bath or wash for his baby—that is, when his child was still a baby— than when he purchased a bottle of olive oil, we see no ascertainability problem with

10

having the class members submit sworn affidavits describing the circumstances under which the purchases were made."); *see also Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1048 (2016) (explaining in the context of representative evidence that "the underlying question … [is] whether the [evidence] at issue could have been used to establish liability in an individual action").

Here, the Court need not consider whether affidavits alone are sufficient, because there is a readily available check on the validity of any class member's self-identification. The district court's statement that the plaintiffs had not demonstrated a "reliable method for screening each self-identification," *Papasan*, 2019 WL 3317750, at *7, is contradicted by the record. The district court failed to address the fact that Dometic can confirm the validity of any claim submitted at the claims-processing stage by the refrigerator serial number or the make and model year of RV in which the refrigerator was pre-installed. *See* Appellant's Initial Br. 5 (citing record). The record thus demonstrates that there are ample means to ensure that this action satisfies Rule 23(b)(3)'s superiority criterion.

In any event, however, concern about verifying class membership is distinct from ascertainability, and it is appropriately addressed after resolution of the merits, "when much more may be known about available records, response rates, and other relevant factors." *Mullins*, 795 F.3d at 664; *see id*. at 667. Submission of "claims forms by oath or affirmation" may be required in some circumstances, while in other

situations additional "substantiation of claims," such as by invoices or other records, is appropriate. *Manual for Complex Litigation* § 21.66, at 331. In all cases, "documentation ... should be no more burdensome than necessary." *Id*. Accordingly, the appropriate "[a]udit and review procedures ... depend on the nature of the case." *Id*. at 332. Large-claim cases "might warrant a field audit to check for inaccuracies or fraud," medium-sized claims may be subjected to "random sampling" audit inquiries, and small claims may be accepted on the basis of the sworn claim forms alone. *Id*.

Importantly, the *Manual for Complex Litigation*'s discussion of substantiating claims through affidavits comes in a discussion of implementation of class-action settlements, not in conjunction with "ascertaining" class members at the certification stage, which often comes first. *See also Byrd*, 784 F.3d at 165 (in a suit alleging damages from the installation of spyware on leased computers, reaffirming that "[t]he ascertainability inquiry is narrow"). This point underscores that where, as here, the class definition is clear, concerns about screening of claims—particularly those made by sworn affidavit—should not be used to scuttle class actions in their infancy. *See Briseno*, 844 F.3d at 1132. Rather, those concerns should be considered in case-management orders, *see* Fed. R. Civ. P. 23(d), or during the settlement or claims process, when the court and the parties are best equipped to address potential fraud or inaccuracy.

The district court's approach—requiring a threshold showing of administrative feasibility and, at the same time, rejecting use of sworn affidavits and other adequate means of identifying class members—provides a way for companies to avoid accountability for unlawful practices: minimizing recordkeeping. As one court explained, allowing the contours of a class to be defined by defendants' own recordkeeping—"or declining to certify a class altogether, as defendants propose— would create an incentive for a person to … keep no records of its activity, knowing that it could avoid legal responsibility for the full scope of its illegal conduct." *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 250 (N.D. Ill. 2014); *see Daniels v. Hollister Co.*, 113 A.3d 796, 801–02 (N.J. App. 2015) ("Allowing a defendant to escape responsibility for its alleged wrongdoing by dint of its particular recordkeeping policies … is not in harmony with the principles governing class actions."); *see also Tyson Foods*, 136 S. Ct. at 1047 (explaining that in Fair Labor Standards Act cases, "[i]nstead of punishing 'the employee by denying him any recovery'" where the employer has failed to keep records, a court may allow the employee to present evidence sufficient to establish proof of a claim through "just and reasonable inference" (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946))); *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001) (Sotomayor, J.) (holding that refusal to certify a class "on the sole

ground that it would be unmanageable is disfavored and should be the exception rather than the rule" (internal quotation marks omitted)).

**B.** A heightened "administrative feasibility" requirement at the certification stage is not needed to protect defendants' due process rights. Where the class definition is imprecise, the problem is identifying who is bound by a judgment. Here, however, the class definition is clear and objective, and any class member who later tried to sue Dometic over the allegedly defective refrigerator would be bound by res judicata unless he or she could somehow collaterally attack the judgment on due process grounds. If the notice comports with due process, such an attack would be meritless.

Moreover, our research has identified only three successful collateral attacks on class-action judgments certified under Rule 23(b)(3): *Stephenson v. Dow Chemical Co.*, 273 F.3d 249, 259–61 (2nd Cir. 2001), *aff'd by equally divided court,* 539 U.S. 111 (2003), *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1223–24 (11th Cir. 1998), and *Palmer v. Gentek Building Products, Inc.*, 936 N.W.2d 552, 559 (N.D. 2019). None of the three successful collateral attacks involved a problem in "ascertaining" who was in the class or an assertion that some class members' interests had been "diluted by fraudulent or inaccurate claims"—a concern of the court in *Carrera*, 727 F.3d at 310. For these reasons, class-action defendants have no legitimate concern that, absent an extension of the ascertainability requirement,

they will face collateral attacks on class-action judgments to which they are parties. The small number of successful collateral attacks shows that the risk of future successful collateral attacks is itself vanishingly small. This number appears even smaller in light of the number of class-action judgments potentially subject to collateral attack. That number is comparatively large, and many of those judgments involve relatively small claims arising under consumer protection, securities, and similar statutes that depend on the class-action device for their survival.[2] Given this large number of cases, if the concern about application of res judicata were correct, the courts would have been entertaining collateral attacks on class-action judgments for decades. Instead, there have been almost none.

In addition, although a defendant has a due process right to challenge the plaintiff's evidence at any stage of the case, including the claims or damages stage, this right is not impeded by use of affidavits to establish class membership, "subject as needed to audits and verification procedures and challenges, to identify class members." *Mullins*, 795 F.3d at 669. At the claims administration stage, parties have

---

[2] *See* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical L. Stud. 811, 813 (2010) (study showing "that district court judges approved 688 class action settlements" in 2006 and 2007); NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2015 Full-Year Review* at 1 (2016), http://www.nera.com/content/dam/nera/publications/2016/2015_Securities_Trends_Report_NERA.pdf (in federal securities class actions, federal district courts approved 108 class-action settlements in 2015).

long relied on "claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court" to validate claims. *Id*. at 667, *quoted in Briseno*, 844 F.3d at 1130. "The due process question is not whether the identity of class members can be ascertained with perfect accuracy at the certification stage but whether the defendant will receive a fair opportunity to present its defenses when putative class members actually come forward." *Id*. at 670.

To be sure, "[i]n all cases, the defendant has a right not to pay in excess of its liability and to present individual defenses, but both rights are protected by other features of the class device and ordinary civil procedure." *Id*. at 672. The advisory committee's notes confirm this point, explaining that certification may be proper "despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class." Fed. R. Civ. P. 23 advisory committee's notes to 1966 amendment.

At bottom, the district court erred in letting "a quest for perfect treatment of one issue become a reason to deny class certification and with it the hope of any effective relief at all." *Mullins*, 795 F.3d at 662.

## CONCLUSION

For the foregoing reasons and those set forth in plaintiffs-appellants' brief, this Court should reverse the district court's order denying class certification.

Respectfully submitted,

/s/ Allison M. Zieve
Allison M. Zieve
Scott L. Nelson
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

Counsel for Amicus Curiae
Public Citizen

February 6, 2020

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I certify that the foregoing brief is proportionately-spaced, has a type-face of 14 points, and, as calculated by my word processing software (Microsoft Word), contains 3,829 words, less than half the number of words permitted by the Court for the parties' briefs. The electronic version of the foregoing brief has been scanned for viruses and is virus-free according to the anti-virus program.

/s/ Allison M. Zieve
Allison M. Zieve

## CERTIFICATE OF SERVICE

I hereby certify that this brief has been served through the Court's ECF system on counsel for all parties required to be served on February 6, 2020.

/s/ Allison M. Zieve
Allison M. Zieve