NO. 19-13242

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE ELEVENTH CIRCUIT

**Catherine Papasan, Paula Meurer, Timothy Cherry, Kurt Shoemaker, Sr., Gwendolyn and Louis King, Richard and Leah Vollberg, George Zucconi, Gary Graus, Andrew Young, Christopher Johnson, James Jackson, Richard Landsheft, Sandra Greene, Nelson and Marjorie Goehle, and Jill and Sid Garrett,**

*Appellants*,

**v.**

**Dometic Corporation,**

*Appellee.*

On Appeal from a Final Order Entered in the United States District Court for the Southern District of Florida

*AMICUS CURIAE* **BRIEF OF THE NATIONAL ASSOCIATION OF CONSUMER ADVOCATES AND THE NATIONAL CONSUMER LAW CENTER**

Douglas I. Cuthbertson
Lieff Cabraser Heimann &
  Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
212.355.9500

Roger N. Heller
Melissa Gardner
Lieff Cabraser Heimann &
  Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
415.956.1000

*Counsel for Amici Curiae National Consumer Law Center and National Association of Consumer Advocates*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

In compliance with Local Rule 26.1-1, the undersigned certifies that no counsel to a party authored this brief in whole or in part nor contributed any funds directly or indirectly for this brief's preparation, and that no person other than the amici curiae contributed any funding for the preparation of this brief.  Additionally, the following individuals or entities may have an interest in the outcome of this matter:

1.  Beard, Terrence A., Counsel for Appellants – Plaintiffs

2.  Berman, Steve W., Counsel for Appellants – Plaintiffs

3.  Brady, Corey, Counsel for Appellee – Defendant

4.  Cherry, Timothy, Appellant – Plaintiff

5.  Dometic Corporation, Appellee – Defendant

6.  Garrett, Jill, Appellant – Plaintiff

7.  Garrett, Sid, Appellant – Plaintiff

8.  Goehle, Marjorie, Appellant – Plaintiff

9.  Goehle, Nelson, Appellant – Plaintiff

10.  Goldberg, Martin G., Counsel for Appellee – Defendant

11.  Graus, Gary, Appellant – Plaintiff

12.  Greene, Sandra, Appellant – Plaintiff

13. Hagens Berman Sobol Shapiro, LLP, Counsel for Appellants – Plaintiffs

14. Johnston, Christopher, Appellant – Plaintiff

15. Kaye, Joseph M., Counsel for Appellants – Plaintiffs

16. King, Gwendolyn, Appellant – Plaintiff

17. King, Louis, Appellant – Plaintiff

18. Landsheft, Richard, Appellant – Plaintiff

19. Lash & Goldberg, LLP, Counsel for Appellee – Defendant

20. Law Offices of Terrence A. Beard, Counsel for Appellants – Plaintiffs

21. Loeser, Thomas E., Counsel for Appellants – Plaintiffs

22. Mahoney, Barbara, Counsel for Appellants – Plaintiffs

23. Marker, Caleb, Counsel for Appellants – Plaintiffs

24. Meurer, Paula, Appellant – Plaintiff

25. Moskowitz, Adam M., Counsel for Appellants – Plaintiffs

26. Otazo-Reyes, Alicia M., Magistrate Judge, United States District Court for the Southern District of Florida

27. Patel, Pravin R., Counsel for Appellee – Defendant

28. Pincow, Emily L., Counsel for Appellee – Defendant

29. Plaintiffs' proposed class of "all persons in the United States who purchased a Defective Gas Absorption Refrigerator and/or Defective Cooling Unit manufactured on or after January 1, 1997."

30. Rhodes, Gina, Counsel for Appellee – Defendant

31. Rutner, Erica, Counsel for Appellee – Defendant

32. Scarola, Jack, Counsel for Appellants – Plaintiffs

33. Schwartzbaum, Adam A., Counsel for Appellants – Plaintiffs

34. Scola, Jr., Robert N., District Judge, United States District Court for the Southern District of Florida

35. Searcy Denney Scarola Barnhart & Shipley, P.A., Counsel for Appellants – Plaintiffs

36. Shoemaker, Sr., Kurt, Appellant – Plaintiff

37. Soto, Edward, Counsel for Appellee – Defendant

38. The Moskowitz Law Firm PLLC, Counsel for Appellants – Plaintiffs

39. Vollberg, Leah, Appellant – Plaintiff

40. Vollberg, Richard, Appellant – Plaintiff

41. Weil, Gotshal & Manges, LLP, Counsel for Appellee – Defendant

42. Weintraub, Greg J., Counsel for Appellee – Defendant

43. Young, Andrew, Appellant – Plaintiff

44. Zimmerman Reed, LLP, Counsel for Appellants – Plaintiffs

45.  Zucconi, George A., Appellant – Plaintiff

*Amici* National Consumer Law Center and National Association of

Consumer Advocates are non-profit organizations that do not have parent

companies and are not subsidiaries or affiliates of a publicly owned corporation.

Dated:    February 6, 2020        Respectfully submitted,

_____
Douglas I. Cuthbertson
Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
212.355.9500

Roger N. Heller
Melissa Gardner
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
415.956.1000

*Counsel for Amici Curiae National Consumer Law*
*Center and National Association of Consumer*
*Advocates*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT .................................................................i

INTERESTS OF AMICI CURIAE...........................................................1

STATEMENT OF THE ISSUES..............................................................3

SUMMARY OF ARGUMENT ................................................................4

ARGUMENT ........................................................................................6

    I.    A Strict Threshold Identifiability Requirement Undermines the Flexibility of Rule 23 for Managing Class Actions and Class Relief ............................................................................................8

    II.    A Presumption against Establishing Ascertainability through Self-Identifying Affidavits is Not Needed to Protect the Rights of any Party ........................................................................................10

    III.    Self-Identification by Affidavit, Where it is Needed, is Manageable and Furthers the Goals of Rule 23 ................................12

        A.    Evidence Submitted by Class Members is Just as Manageable as Other Forms of Proof ......................................13

        B.    Courts Have Adequate Procedures for Evaluating Evidence on Identifiability If and When Such is Necessary to Distribute a Class Action Judgment...................14

        C.    Numerous Reliable Tools and Data Can be Used to Verify Claims, Not Just Records Identified by Counsel Prior to Class Certification.......................................................17

    IV.    A Presumption Against Self-Identifying Affidavits in Practice Inhibits the Protection and Enforcement of Important Rights ...........23

CONCLUSION ......................................................................................25

## <u>TABLE OF CITATIONS</u>

<u>Page(s)</u>

**Cases**

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997) ..................................................................................8

*Booth v. Appstack, Inc.*,
  No. 13-1533, 2016 WL 3030256 (W.D. Wash. May 25, 2016) ..........................16

*Forcellati v. Hyland's, Inc.*,
  No. 12-1983, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ................................18

*Gunnells v. Healthplan Servs., Inc.*,
  348 F.3d 417 (4th Cir. 2003) ....................................................................8

*Hilsley v. Ocean Spray Cranberries, Inc.*,
  No. 17-2335, 2019 WL 718807 (S.D. Cal. Feb. 5, 2019) ...................................18

*In re Beef Indus. Antitrust Litig.*,
  607 F.2d 167 (5th Cir. 1979) ....................................................................8

*In re Urethane Antitrust Litig.*,
  768 F.3d 1245 (10th Cir. 2014) .................................................................10

*In re Zurn Pex Plumbing Prod. Liab. Litig.*,
  267 F.R.D. 549 (D. Minn. 2010) ...............................................................20

*In re Zurn Pex Plumbing Prod. Liab. Litig.,*
  No. 08-md-1958, 2012 WL 5055810 (D. Minn. Oct. 18, 2012)..................20, 22

*In re Zurn Pex Plumbing Prod. Liab. Litig.*,
  No. 08-md-1958, 2013 WL 716088 (D. Minn. Feb. 27, 2013) ..........................21

*Jennings v. Rodriguez*,
  138 S. Ct. 830 (2018) ..............................................................................10

*Karhu v. Vital Pharm., Inc.*,
  621 F. App'x 945 (11th Cir. 2015) .............................................................4, 6

*Krakauer v. Dish Network LLC*,
  No. 14-333, 2019 WL 3002883 (M.D.N.C. July 10, 2019)................................15

*Krakauer v. Dish Network, L.L.C.*,
  925 F.3d 643 (4th Cir. 2019)...................................................................16

## TABLE OF CITATIONS
(continued)

*Krakauer v. Dish Network, LLC*,
No. 14-333, 2019 WL 7066834 (M.D.N.C. Dec. 23, 2019) ...............................15

*Morrissey v. Brewer*,
408 U.S. 471 (1972) ...............................................................................10

*Mullins v. Direct Digital, LLC*,
795 F.3d 654 (7th Cir. 2015)........................................................ 11, 13

*Physicians Healthsource, Inc. v. A-S Medication Solutions LLC*,
No. 11-03003, ECF No. 372 Order (N.D. Ill. Mar. 2, 2019) ...............................12

*Randolph v. J.M. Smucker Co.*,
No. 13-80581, ECF No. 73 (S.D. Fla. Feb. 13, 2015) ........................................24

*Randolph v. J.M. Smucker Co.*,
303 F.R.D. 679 (S.D. Fla. 2014) .........................................................................24

*Rodman v. Safeway Inc.*,
No. 11-03003, 2018 WL 4030558 (N.D. Cal. Aug. 23, 2018) ...........................12

*Tait v. BSH Home Appliances Corp.*,
289 F.R.D. 466 (C.D. Cal. 2012) ........................................................................19

*Tait v. BSH Home Appliances Corp.*,
No. 10-0711, 2015 WL 4537463 (C.D. Cal. July 27, 2015).................................19

*Wakefield v. ViSalus, Inc.*,
No. 15-1857-SI, 2019 WL 3945243 (D. Or. Aug. 21, 2019)..............................16

*Waters v. Int'l Precious Metals Corp.*,
172 F.R.D. 479 (S.D. Fla. 1996) ........................................................................16

**Rules**

Fed. R. Civ. P. 23
Advisory Committee Notes (Dec. 1, 2018)...........................................................9

Fed. R. Civ. P. 23(e)(2) ..........................................................................................12

Fed. R. Civ. Pro. 23(c)(2)(B) .................................................................................11

**Other Authorities**

3 Newberg on Class Actions
§§ 3.3, 7:26 (5th ed.) ..........................................................................................8, 9

## TABLE OF CITATIONS
(continued)

**Page(s)**

3 Newberg on Class Actions,
§ 6:17 (4th ed.) ...................................................................................8, 9

FTC Staff Report, *Consumers and Class Actions: A Retrospective and Analysis* (Sept. 2019)...................................................................... 11, 14

Manual for Complex Litigation Fourth
§ 21.222 at 270 (Fed. Jud. Ctr. 2004)...............................................8, 9

Rhonda Wasserman, *Ascertainability: Prose, Policy, and Process*,
50 Conn. L. Rev. 695 (2018)...............................................................17

## <u>INTERESTS OF AMICI CURIAE</u>

The National Consumer Law Center ("NCLC") is a non-profit research and advocacy organization that focuses on the legal needs of low-income, financially distressed, and elderly consumers.  Founded at Boston College Law School in 1969, NCLC is a 501(c)(3) and legal aid organization that employs many attorneys and advocates with twenty or more years of specialized consumer law expertise. NCLC has been a leading source of legal and public policy expertise on consumer issues for legislatures, agencies, courts, consumer advocates, journalists, and social service providers for over fifty years.  NCLC works to defend the rights of consumers, concentrating on advocating for fairness in financial services, wealth building and financial health, a stop to predatory lending and consumer fraud, and protection of basic utility services for low income families.

NCLC is committed to preserving access to justice and established its own litigation practice in 1999.  Since then, the organization has brought or co-counseled over 140 consumer cases.  NCLC publishes a twenty-two volume Consumer Credit and Sales Legal Practices Series including, *inter alia*, Consumer Class Actions (9th Ed. 2016).  The organization also has sponsored an annual Consumer Rights Litigation Conference for 28 years and an annual Class Action Symposium for 19 years.

1

The National Association of Consumer Advocates ("NACA") is a nationwide, nonprofit corporation with over 1,500 members who are private and public sector attorneys, legal services attorneys, law professors, law students and non-attorney consumer advocates, whose practices or interests primarily involve the protection and representation of consumers. Its mission is to promote justice for all consumers. NACA is dedicated to the furtherance of ethical and professional representation of consumers. Its Standards and Guidelines for Litigating and Settling Consumer Class Actions may be found at 299 F.R.D. 160 (2014), and https://www.consumeradvocates.org/resources/class-action-guidelines.

Both *Amici* have an interest in seeking strong and effective enforcement of consumer protection laws, and class actions are an important tool for achieving this objective. *Amici* frequently appear as *amicus curiae* in consumer law cases before trial and appellate courts throughout the country, including on issues concerning Federal Rule of Civil Procedure 23. *Amici* also participated in the process leading to the most recent amendments of Rule 23 by jointly submitting written testimony to the Rule 23 Subcommittee and testifying before the Advisory Committee on Civil Rules. Based upon their significant experience litigating, advising, and monitoring class action litigation in federal courts, and elsewhere, *Amici* believe they can be of assistance in illuminating the practical implications on day-to-day class action practice of the policy issues before the Court.

2

## STATEMENT OF THE ISSUES

Whether the "ascertainability" standard applied by the lower court failed to adequately consider the realities of post-certification class litigation.

## SUMMARY OF ARGUMENT

*Amici* respectfully file this Brief in support of Appellants to address one aspect of the lower court's decision concerning the use of affidavits to identify class members at the post-judgment stage of an action.  In particular, *Amici* seek to clarify and correct inaccuracies suggested by the court below about what can be expected to happen, in practice, when self-identifying affidavits are used.

The lower court relied significantly on  an unpublished opinion from this Circuit, *Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945 (11th Cir. 2015), which in turn relied upon assumptions about the use of affidavits that are inconsistent with *Amici's* experience and research about how these issues play out in practice. *Karhu* and the lower court here suggest that using affidavits from class members can be expected to create administrative difficulties, require "mini trials," or violate a defendant's due process rights.  However, that is not the case.

**First**, *Karhu's* harsh ascertainability standard—that the use of self-identifying affidavits are suspect unless proven otherwise prior to class certification—defies the flexible approach to class certification and class relief embodied in Federal Rule of Civil Procedure 23.

**Second**, a presumption against establishing ascertainability through self-identifying affidavits is not needed to protect the rights of any party.  The "potential problem" of due process violations is illusory with respect to defendants,

and already fully addressed with respect to absent class members through the flexibility that Rule 23 affords to trial courts for fashioning appropriate class notice.

**Third**, self-identification by affidavit is regularly employed throughout the federal courts to distribute benefits to class members with no need for a showing, prior to adjudication on the merits, of "how" they will be used. The potential problems of "mini-trials" that concerned the panel in *Karhu* do not materialize in practice. Courts successfully manage such evidence and the treatment of class member benefits, at the appropriate stage of the litigation, based on the particular information available and other particular case circumstances.

**Fourth**, problems *do* materialize, particularly for consumers, when courts preemptively require a showing of class member identifiability at class certification, because the requirement erects an unnecessary procedural barrier to certification that prevents aggrieved consumers from obtaining relief, and allows bad conduct to continue undeterred in a variety of contexts where the class action device has long been essential to enforcing consumer protection laws.

*Karhu's* concerns, and the court's denial of class certification below are based on unfounded assumptions about practice in the trial courts that disregard relevant empirical research and established tools for efficiently conducting class-wide distribution, as well as the reality that those tools have been used flexibly and responsibly by courts overseeing the distribution of class relief, for decades.

## **ARGUMENT**

This appeal arose from an order denying class certification for failure to establish "ascertainability."  The lower court applied guidance from this Circuit's unpublished opinion, *Karhu v. Vital Pharmaceuticals*, that "a plaintiff cannot satisfy the ascertainability requirement by proposing that class members self-identify (such as through affidavits) without first establishing that self-identification is administratively feasible and not otherwise problematic."  621 F. App'x at 948; ECF No. 418 (lower court order).  *Karhu* concluded that a threshold showing of administratively feasible identifiability was necessary at class certification, in light of what the panel there perceived to be "potential problems":

> On the one hand, allowing class members to self-identify without affording defendants the opportunity to challenge class membership provides inadequate procedural protection to defendants and implicates their due process rights.  On the other hand, protecting defendants' due-process rights by allowing them to challenge each claimant's class membership is administratively infeasible, because it requires a series of mini-trials just to evaluate the threshold issue of which persons are class members.

*Id.*, at 948-49 (citations and quotation marks omitted).

The ostensible dilemma perceived by the panel in *Karhu*, *i.e.* that courts are presented with a binary choice between violating due process or conducting mini-trials, was the sole basis there for imposing heightened procedural requirements for ascertainability at class certification.  The options available to courts are not so

limited in practice.  More than five decades of experience under Rule 23 confirm that parties' due process rights, on both sides of class cases, can properly be protected when self-identification is part of a claims process.  The risk of "mini trials" is theoretical, not actual, because the courts, professional claims administrators, and special masters have developed tools for managing evidentiary input from class members at the post judgment stage, and protecting the parties' respective due process rights.

Importantly, the proper time to identify whether such tools are needed and if so the best tool(s) for the task, is *not* at the class certification stage, but later in the proceedings when there is greater clarity as to the specific case's needs and the information that is available to assist in the task.  In many cases, evidence and factual determinations developed through post-certification proceedings will have substantially altered the identifiability landscape by the time judgment is entered, sometimes enabling distribution of relief without any further inquiry.  And where further informational needs do remain, trial courts are able to facilitate and fulfill that need, without the need for so-called "mini trials," as discussed below.  Which tool(s) are best suited to a particular case, and the most effective and efficient way to utilize such tools, will likewise often turn on post-certification evidence and findings by the court.

## I.    A Strict Threshold Identifiability Requirement Undermines the Flexibility of Rule 23 for Managing Class Actions and Class Relief

The harsh ascertainability standard applied by the lower court here—that the use of self-identifying affidavits are suspect unless proven otherwise prior to class certification—puts the cart before the horse, and defies the flexible approach favored by Rule 23 and applied successfully by courts for decades. *See In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 177 (5th Cir. 1979), *cert. denied*, 452 U.S. 905 (1981) (citation omitted) (observing that "hallmark" of Rule 23 "is the flexibility it affords to the courts to utilize the class device in a particular case to best serve the ends of justice for the affected parties and to promote judicial efficiencies"); *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (Rule has equitable origins); *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003) (citations and quotation marks omitted) ("courts should give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility [to] . . . best serve the ends of justice . . . .").

The ultimate identification of class members for distribution purposes has never required indisputable proof of individual class membership, let alone at the class certification stage. *See* Manual for Complex Litigation Fourth § 21.222 at 270 (Fed. Jud. Ctr. 2004) ("Manual"); 3 Newberg on Class Actions, § 6:17 (4th ed.); 3 Newberg on Class Actions §§ 3.3, 7:26, 7:27 (5th ed.). Rather, if known records are inadequate to reasonably identify class members at the time notice is

given, notice by publication is commonly allowed, and class members identify themselves by filing claims, sometimes sworn to under the penalty of perjury. See Manual §§ 21.311 at 287-88, § 21.312 at 294 & § 21.66 at 331; Newberg (4th ed.) § 4:35 at 309 & § 11:34 at 70-71; Newberg (5th ed.) § 8:29.

Recent changes to the advisory committee notes for Rule 23 confirm that this approach is still proper by providing guidance on structuring a claims process in the class settlement context. These notes require that courts "scrutinize the method of claims processing to ensure that it *facilitates* filing legitimate claims," further explaining, consistent with Rule 23's underlying principles, that the process should "deter *or* defeat unjustified claims," but should not be unduly demanding. Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018) (emphasis added). And, in cases where confirming the precise identity of class members turns out to be impossible, courts may distribute litigation or settlement proceeds for the benefit of the class under the *cy pres* doctrine. Newberg (4th ed.) § 10:17-10:18.

*Karhu's* administrative feasibility requirement denies the parties and the lower courts the flexibility embodied in the express requirements of Rule 23. In the many cases where courts *have* been permitted the flexibility to fulfill the Rule's equitable objectives, self-identification by affidavit has been utilized successfully without running afoul of due process or rendering class actions unmanageable.

## II.     A Presumption against Establishing Ascertainability through Self-Identifying Affidavits is Not Needed to Protect the Rights of any Party

The court below identified defendants' due process rights as a reason for presumptively rejecting proposals to use self-identifying affidavits absent a showing that self-identification is administratively feasible and not otherwise problematic.  However, a defendant's due process rights in a class action, as in any action, must be evaluated in light of the particular circumstances.  *See Jennings v. Rodriguez*, 138 S. Ct. 830, 852 (2018), quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("'[D]ue process is flexible,' we have stressed repeatedly, and it 'calls for such procedural protections as the particular situation demands.'").

Self-identification does not require unmanageable protections for defendants' due process rights.  In particular, courts widely have held that where a defendant's total liability does not depend on identifying class members (as in the case of an overall cap on liability to the class), the sort of due process concerns raised in *Karhu* and by the lower court here are entirely absent.  *See, e.g.*, *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1269 (10th Cir. 2014).  In cases where the defendant is liable to pay a judgment on a per-claim basis and there is no aggregate cap on damages, the use of a claims process for self-identification likely means that the defendant will escape some of the financial liability that actually would flow from its legal violations had all class members filed individual cases or through a mass action, because many eligible class members will not submit

10

claims.[1]  Thus, an assumption that the use of a claims process to identify class members might improperly subject a defendant to *excess* liability is illogical and completely at odds with real world experience.

Self-identification also does not violate absent class members' rights. Purported concerns about due process for absent class members are already addressed by Rule 23, which calls for a class process that incorporates fair, reasonable, and adequate procedures for identifying and distributing judgment relief to the class—exclusively through the defendant's records when that is an option, or through a process that includes an properly-tailored notice and claims process where necessary.  Fed. R. Civ. Pro. 23(c)(2)(B).  Of course, individual class members—particularly in cases involving lower-cost consumer products— are unlikely to file individual actions given the costs of doing so relative to their respective damages.  The alternative for the absent class member is generally no relief at all.  *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 666 (7th Cir. 2015) ("When it comes to protecting the interests of absent class members, courts should not let the perfect become the enemy of the good.")  Moreover, while concerns are sometimes raised about the prospect of fraudulent claims, there are tried and true

---

[1] *See, e.g.* FTC Staff Report, *Consumers and Class Actions: A Retrospective and Analysis* (Sept. 2019), at pp. 25-27 (discussing average claims rates in class settlement context), available at https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf.

mechanisms to protect against error and fraud, and the FTC's empirical research

confirms that claims processes do not dilute class member recoveries.

### III.  Self-Identification by Affidavit, Where it is Needed, is Manageable and Furthers the Goals of Rule 23

Numerous class actions, particularly those involving low-value consumer

claims which could not reasonably be brought another way, have successfully

employed claim forms and similar self-identification mechanisms to distribute

class relief, with no need for conducting any heightened pre-certification analysis

of what distribution processes may be available to be utilized later in the case.

In the context of those post-trial class judgments where self-identification

does become a necessary part of the distribution process, class members have not

been required to submit indisputable evidence of a right to compensation.  Rather,

consistent with the equitable principles of Rule 23, trial courts have applied the

same standard set forth in Federal Rule 23(e)(2) (for distribution of settlement

funds), which does not require perfection, but rather that the method of distribution

be "fair, reasonable, and adequate."  *See* Fed. R. Civ. P. 23(e)(2); *Rodman v.

Safeway Inc.*, No. 11-03003, 2018 WL 4030558, at \*2 (N.D. Cal. Aug. 23, 2018)

(approving plan for distributing judgment to 297,822 consumers); *Physicians

Healthsource, Inc. v. A-S Medication Solutions LLC*, No. 11-03003, ECF No. 372

Order, at \*7 (N.D. Ill. Mar. 2, 2019) (observing in connection with approval of

proposal to distribute judgment recovered for more than 11,000 class members,

12

that "[i]n evaluating a claims process, the district court must ensure that the process is "fair and reasonable and not so burdensome as to discourage class members from submitting claims.").

There is nothing unique about information obtained from absent class members that should require a preemptive analysis of its verifiability; as with any evidence submitted to prove or disprove a fact in dispute, courts have means to efficiently evaluate the evidence at the appropriate times. *See e.g.*, *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 667 (7th Cir. 2015) (courts "can rely, as they have for decades, on claim administrators, various auditing processes, sampling for fraud detection, follow-up notices . . ., and other [tailored] techniques. . . ."). Indeed, it is premature at the class certification stage to even assume that the same evidence then known or considered by the parties will necessarily be what is used or available for post-judgment distribution at the conclusion of the case.

### A.  Evidence Submitted by Class Members is Just as Manageable as Other Forms of Proof

In many viable consumer protection class actions, class members will be the best source of evidence about their own identities, even after party discovery has concluded.  If the class definition is objective and thus sufficient to allow a member of the class to self-identify, then class members can come forward to claim their share of any award.  Class members may possess documentary evidence sufficient to verify their claims, as appropriate for consideration under the

circumstances of a given case.  If that is not the case, verification can be accomplished by requiring class members to complete an affidavit or claim form, which can be required under penalty of perjury if the court deems it necessary to safeguard against potential fraudulent or erroneous claims.  There is nothing inherently unmanageable about confirming the documentation provided in a claim form or confirming the information entered on a standard affidavit.  Claims administrators handle this sort of task all the time, including in cases involving millions of consumers/claimants.  *See, e.g.* FTC Report, *supra* n.1 (analyzing data from seven national claims administrators on 149 consumer cases involving thousands to millions of class members).

### B.    Courts Have Adequate Procedures for Evaluating Evidence on Identifiability If and When Such is Necessary to Distribute a Class Action Judgment

*Karhu's* and the lower court's inflexible requirement that any "potential problems" with self-identifying affidavits must be addressed at the outset of a litigation disregards the practicalities of class certification case procedures and the timing of when evidence pertinent to these issues may be provided and is best evaluated.  Disputes about class member identifiability may significantly change, or even resolve, by the time they become pertinent to the case.  It is often the case that substantial information related to class member identification comes to light only after class certification, including through the course of trial.

14

A Telephone Consumer Protection Act ("TCPA") case recently litigated to judgment, *Krakauer v. Dish Network L.L.C.*, illustrates that self-identification is effective and available when it is needed, without the need to inquire at the outset into how "potential problems" with affidavits would be addressed.  There, in post-trial proceedings concerning distribution of a $61,342,800 judgment to class members, the trial court determined that approximately 7,000 members of the 18,000-person class could not be identified without contradiction from the defendant's records.  *See Krakauer v. Dish Network, LLC*, No. 14-333, 2019 WL 7066834, at *2 (M.D.N.C. Dec. 23, 2019); *id.*, ECF No. 439.  Based upon the information available at that time, the court ordered that a claims process be implemented in consultation with a claims administrator to obtain the needed evidence via self-identifying affidavit.  *Id.,* ECF No. 441, at *6-9.  The parties were ordered to meet and confer on disputes about the claims process, and a special master was appointed to submit recommendations on objections to the claims administrator's findings, pursuant to instructions that issues previously raised and adjudicated in the course of the litigation were not to be re-litigated.  *Id.* The Court subsequently ruled on the parties' objections.  *Krakauer v. Dish Network LLC*, No. 14-333, 2019 WL 3002883 (M.D.N.C. July 10, 2019).

Because the *Krakauer* court recognized that the use of self-identifying affidavits is a viable means to identify class members in consumer protection

15

actions (whether or not first evaluated years earlier at class certification), the

litigation was able to achieve objectives codified by Congress in the TCPA.  *See*

*also, e.g.*, *Booth v. Appstack, Inc.*, No. 13-1533, 2016 WL 3030256, at *8 (W.D.

Wash. May 25, 2016) (finding "whether confirmation of TCPA Class members is

performed via sworn self-identification, review of specific phone records, or

another method, minimal individualized inquiry is required"); *Wakefield v. ViSalus,

Inc.*, No. 15-1857-SI, 2019 WL 3945243, at *9 (D. Or. Aug. 21, 2019) (same

observations post-trial in advance of distributing TCPA judgment for the class). [2]

  In affirming the *Krakauer* court's orders on class certification and final

judgment, the Fourth Circuit Court of Appeal noted that class adjudication

"requires striking a balance between efficient administration and fairness to all

those affected, whether they be the class members, the defendants, or absent parties

who are nonetheless bound by the judgment.  The proceedings below reflected just

the measured and thorough approach that we might hope for in such demanding

situations." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 663 (4th Cir. 2019),

*cert. denied*, No. 19-496, 2019 WL 6833425 (U.S. Dec. 16, 2019).

---

[2] The procedures employed in *Krakauer* have been successfully utilized by trial
courts for decades. *See e.g., Waters v. Int'l Precious Metals Corp.*, 172 F.R.D. 479,
509–10 (S.D. Fla. 1996) (ordering process of compiling class list with objections to
be considered by special master and globally adjudicated by court).

**C.** **Numerous Reliable Tools and Data Can be Used to Verify Claims, Not Just Records Identified by Counsel Prior to Class Certification**

Professional claims administrators have honed reliable techniques for identifying valid claimants and determining the amounts of valid claims in all types of consumer and other litigation. Their expertise in claims administration, including in market research, data analysis, and fraud detection, enable tailored notice and claims programs that yield practical and effective results in terms of identifying class membership and distributing class proceeds, both in the settlement and the post-judgment context. *See* Rhonda Wasserman, *Ascertainability: Prose, Policy, and Process*, 50 Conn. L. Rev. 695, 726 (2018) (discussing techniques employed by claims administrators).

In the case of a genuine dispute about class member identity, claim forms present a flexible and effective solution. They can be designed to secure the same information or evidence from each claimant, such as information about the details of a product, date or location of purchase, or documentation relevant to class membership. Particularly in light of technological advancements in mass communications—the ability to target messages by characteristics such as age and interests, to host websites where evidence and information can be submitted (and traced), to easily share documents electronically, and similar achievements, trial

17

courts have better tools now than at any time in history for eliciting whatever facts are necessary to protect all parties' rights as particular circumstances may require.

Claims administrators are skilled in securing and using available data as a cross-check on class member attestations in both the settlement and post-trial judgment context. *See e.g.*, *Forcellati v. Hyland's, Inc.*, No. 12-1983, 2014 WL 1410264, at \*7 n.3 (C.D. Cal. Apr. 9, 2014) (describing a process that would screen out, inter alia: any claim form that stated that a product was purchased from a retailer that does not sell the product (by crosschecking them with records showing which retailers sold which products in which locations)).[3]

Claims administrators by no means are limited to using data available from the parties, or that might be considered in the early stages of a case. *See e.g.* *Hilsley v. Ocean Spray Cranberries, Inc.*, No. 17-2335, 2019 WL 718807, at \*1 (S.D. Cal. Feb. 5, 2019) and ECF No. 89-4 (for post-certification class notice, administrator relied upon Census data and market research to identify subsets of population most likely to have purchased the defendant's products).

Two illustrations further demonstrate that reliance on self-identification, and the procedural tools discussed throughout this brief do not create unmanageability or mini-trials. Both arose in the context of claims-made settlements where the

---

[3] Appellants' brief provides numerous further examples demonstrating that affidavits can create a link between class member identity and information that can be verified against a defendant's business records, as the lower court here could have done with the Dometic refrigerator serial numbers. Appellant Br. at 48, n.22.

defendant's financial obligation depended on the number of valid claims submitted. Although, to this point, this brief has focused on distribution of litigated judgments, these examples are also illustrative, as the defendant's financial incentive to disprove a claimants' entitlement to a payment in those cases mirrors the incentives in the non-settlement context.

The first illustration involved a certified class of "[a]ll persons who purchased" certain front-loading washing machines. *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 471 (C.D. Cal. 2012). There, the court had not required, at class certification, a showing of how class members would be identified. *Id.* After several years of litigating Magnuson–Moss Warranty Act and other consumer protection claims, the parties reached a settlement, which provided for payments on a claims-made basis; unclaimed funds would be retained by the defendant. *Tait v. BSH Home Appliances Corp.*, No. 10-0711, 2015 WL 4537463, at *3 (C.D. Cal. July 27, 2015). Some class members had been identified from the defendant's warranty records, but the majority of the class was unidentified. *Id.*

With assistance from a professional claims administrator, the *Tait* parties devised, and the court approved, a plan requiring that identified class members only confirm their mailing address and their class membership by affidavit to be awarded compensation ($55 per claimant). Class members who were not identified in known records had to submit other proof of ownership (such as a

19

picture of their washer's serial number) and confirm their class membership by affidavit. *Id.* Relief was apparently successfully distributed to the valid claimants. *See generally*, *BSH Home Appliances*, No. 8:10-00711 (C.D. Cal.).

The second illustration also concerned class members whose identities could not be determined from known records: purchasers of brass plumbing fittings installed in homes throughout the United States. *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 267 F.R.D. 549 (D. Minn. 2010), *aff'd,* 644 F.3d 604 (8th Cir. 2011). The defendant represented it had no information on how many homes or buildings contained the fittings at issue, nor where in the United States those fittings were located. *Id.* at 558. When the trial court certified the class of "[a]ll persons and entities that own a structure located within the State of Minnesota that contains a Zurn Pex plumbing system with Zurn brass crimp fittings," it did not require a showing of how class members would be identified. *See id.*

The case later settled on behalf of a similarly-defined nationwide class. *See In re Zurn Pex Plumbing Prod. Liab. Litig.,* No. 08-md-1958, 2012 WL 5055810, at *1 (D. Minn. Oct. 18, 2012). The settlement established a claims process providing for up to $100,000 to each class member who submitted a valid claim for property damage and other problems caused by corrosion and leaks of the fittings, up to $20 million in total. Unclaimed funds would be retained by the defendant. *Id.* at 5. When notice of the settlement was disseminated, contact information had

20

been located for approximately 6,000 class members in customer warranty records; those class members received direct mailed notice. To reach unidentified class members (the vast majority) the settlement was publicized in national and industry publications, internet banner ads, a press release, and a dedicated case website. *See In re Zurn Pex Plumbing Prod. Liab. Litig*., No. 08-md-1958, 2013 WL 716088, at *2 (D. Minn. Feb. 27, 2013); *Id.*, ECF No. 243.

Class member identification occurred through the claims process. A detailed, eight-page claim form[4] allowed class members to prove their damages and class membership through objectively-verifiable means, such as by identifying the contractor who had built their homes (possibly the original purchasers of the fittings); by submitting property inspection or engineering reports, bills of sale, builder or plumbing records or other correspondence identifying the fittings; by submitting photographs of the fittings in their homes, and/or by mailing in fittings that had been uninstalled. The claim form asked other questions useful to verify claims, such as when the fittings were installed, the time and place of purchase, for a description of any leaks or reduction in water flow, and for documentation associated with repairs. The class notice and case website included photographs of the fittings to assist people seeking to ascertain for themselves whether they owned the brass fittings at issue.

---

[4] A copy of the claim form and other case documents, are available on the settlement website, at http://www.plumbingfittingsettlement.com.

Throughout the claims process, the claims administrator evaluated the claim forms, and a special master was available to adjudicate any disputes that might arise over a given claim's validity. *See id.* ECF No. 212-1, ¶ 106. The process was conducted efficiently despite the parties' diverging incentives. Like the trial court's docket in *BSH Home Appliances*, review of the *In re In re Zurn Pex* docket reveals no individualized inquiries that were required of the trial court. *See generally In re Zurn Pex Plumbing Prod. Liab. Litig.*, No. 08-md-1958 (D. Minn.).

These examples confirm that it is not helpful at class certification to make assumptions about how post-judgment distribution will play out, *i.e.*, about whether mini-trials will be required to resolve disputes about class membership. Disputes raised at class certification may not even remain after trial, for those cases that do not resolve prior to trial. In all cases, whether or not discussed at an early stage, claim forms, where they may be needed, allow for the submission of objective evidence that can reliably identify class members and facilitate the distribution of class proceeds. Programs can be tailored for the specific circumstances of the case using an often wide array of information, not all of which may be foreseen or even foreseeable to the parties at the time the class is certified.

**IV.    A Presumption Against Self-Identifying Affidavits in Practice Inhibits the Protection and Enforcement of Important Rights**

Consumer class actions provide benefits beyond simply compensating the injured individual class members.  They vindicate cumulative harm, obtain institutional change, deter corporate wrongdoing, and require disgorgement of illegal profits.  The overly-harsh ascertainability standard applied by the lower court in this case has the practical effect of interfering with one of the primary purposes of Rule 23 by preventing consumers from holding accountable, *inter alia*, manufacturers of defective products throughout this Circuit and elsewhere.

The examples above show that, when claims processes are necessary, courts can use them to enforce consumer protection laws while respecting due process and manageability concerns.  Requiring the plaintiff to show, at the class certification stage, that class members can be identified through the defendant's records or, where any use of self-identification may be needed, to forecast exactly "how [that] self-identification would work," erects an unnecessary procedural barrier to the enforcement of important rights.  *See* ECF No. 418, at *9.

Appellants' opening brief identifies several important actions that were halted before adjudication of the merits because they failed to meet the procedural standard set forth in *Karhu*.  *See* Appellant Br. at 30-31, n.12.  To provide another example in the consumer protection context, the district court in *Randolph v. J.M. Smucker Co.* denied class certification to consumers who had purchased certain

23

cooking oil, finding that a claims process would fail because "the likelihood that an individual would recall not only which specific kind of oil, but also, when that oil was purchased, complicates identification of the putative class."  303 F.R.D. 679, 687 (S.D. Fla. 2014).  The case was ultimately dismissed by stipulation, but not before evidence came to light indicating that purchases of the cooking oil were actually tracked by retailers using loyalty cards and other means, and that many if not all of the consumers could have been identified without reliance on a claims process at all.  *Randolph v. J.M. Smucker Co.*, No. 13-80581, ECF No. 73, at *5 (S.D. Fla. Feb. 13, 2015) (Renewed Motion for Certification).

Denying class certification for failure to forecast how a claims process might unfold harms consumers, particularly those whose identities *could* ultimately be known or verified from available records or through an appropriate claims process developed later in the litigation.  By disregarding established case management techniques and the claims administration procedures developed over decades by claims administration professionals, *Karhu's* presumption against self-identification needlessly prevents courts from certifying viable class actions which, consistent with Rule 23's policy, historical precedent, and practice, provide the best, and in many cases the only, means to enforce consumers' legal rights.

## **CONCLUSION**

Class member self-identification, along with the availability of special masters and claims administrators, provide proven ways for managing post-judgment distribution manageably and efficiently.  Where they are ultimately necessary, which often will not be clear until after discovery is completed or even after the trial is completed, these tools allow for the appropriate and fair identification of class members and distribution of class judgment proceeds without the "mini trials" the court below viewed as a threat.

The examples in this brief and other class action cases successfully litigated to conclusion utilizing class member affidavits show that these tools are regularly used in practice, and that they work.  By contrast, the assumptions upon which the lower court's "ascertainability" findings were based are inconsistent with both the experience of practitioners in the federal courts, and with the policy underlying the class action device.

Dated:    February 6, 2020        Respectfully submitted,

_____
Douglas I. Cuthbertson
Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
212.355.9500

25

Roger N. Heller
Melissa Gardner
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
415.956.1000

*Counsel for Amici Curiae National Consumer Law
Center and National Association of Consumer
Advocates*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel hereby certifies that this brief complies with Fed.

R. App. P. 29(4)(G) because, excluding the parts exempted by Fed. R. App. P.

32(f) and 11th Cir. R. 32-4, this brief contains 5,514 words and has been prepared

in a 14-point proportionally spaced typeface.

Dated:     February 6, 2020          Respectfully submitted,

Douglas I. Cuthbertson
Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
212.355.9500

Roger N. Heller
Melissa Gardner
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
415.956.1000

*Counsel for Amici Curiae National Consumer Law Center and National Association of Consumer Advocates*

27

## **CERTIFICATE OF SERVICE**

I hereby certify that, on February 6, 2020, I filed the foregoing document in the United States Court of Appeals for the Eleventh Circuit using the Court's Electronic Case Files (ECF) system, which generates a notice that is emailed to attorneys of record in this matter registered to use the ECF System.

Dated:    February 6, 2020        Respectfully submitted,

Douglas I. Cuthbertson
Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
212.355.9500

Roger N. Heller
Melissa Gardner
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
415.956.1000

*Counsel for Amici Curiae National Consumer Law Center and National Association of Consumer Advocates*